# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Ludovic Deniau, | ) | |
| | ) | |
| John Doe #1 ("TheMan"), | ) | |
| Owner of Gay-Torrents.org, | ) | |
| | ) | |
| John Does #2 through #8, | ) | |
| Administrators of Gay-Torrents.org | ) | |
| (sgmusuk, jasepl, Marius, ams_guy, | ) | |
| lucasneo, simlacroix, matthewmancs), | ) | |
| | ) | |
| BYZONA LTD, | ) | |
| a Bulgarian company, | ) | |
| | ) | |
| Evgenii Nazarov, an individual, | ) | |
| | ) | |
| John Does #9 through #333, | ) | |
| Identified by Gay-Torrents.org usernames, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff FlavaWorks Entertainment, Inc. ("Plaintiff" or "FlavaWorks"), by and through its undersigned attorney, for its Verified Complaint against Defendants, and verified by the accompanying Verification of Phillip Bleicher bound hereto, states as follows:

## NATURE OF THE ACTION

1. This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., for unjust enrichment, civil conspiracy, and fraudulent concealment. Plaintiff brings this action to stop Defendants from infringing, promoting, encouraging, enabling, and facilitating

the infringement of copyrights owned by Phillip Bleicher and exclusively licensed to Plaintiff (collectively, "Plaintiff's Intellectual Property") on the Internet, and to hold accountable the individuals and entities who have for years received and concealed the proceeds of that infringement. Plaintiff's joinder of the Member Defendants in this District is undertaken for the limited purpose of obtaining the third-party identifying information without which Plaintiff cannot proceed against any of these Defendants in any forum. As set forth more fully in Paragraph 26 below, Plaintiff commits that any identified Member Defendant lacking an independent jurisdictional connection to this District will be severed and dismissed without prejudice to Plaintiff's right to refile in that defendant's home district. This is not a mass-joinder action seeking to extract settlements from non-resident Doe defendants in a distant forum.

2. Gay-Torrents.org ("the Site") is a private, invite-only BitTorrent tracker that has operated since at least 2009, facilitating the mass unauthorized distribution of copyrighted adult entertainment content, including works owned by Plaintiff's principal. The Site has approximately 20,671 currently active members and, since its launch in 2009, has registered more than 146,000 members. The Site is operated by Defendant John Doe #1, known on the Site as "TheMan," with the active participation of seven (7) administrators.

3. Defendant Ludovic Deniau joined paid membership websites operated under the FlavaWorks brand, agreed to terms of service prohibiting redistribution, downloaded dozens of copyrighted videos, and made those videos available for unauthorized distribution on Gay-Torrents.org and related piracy platforms. Plaintiff identified Defendant Deniau through forensic identifiers embedded in downloaded video files at the time of download, through analysis of subscription records and payment data matching across multiple FlavaWorks properties, and through internet service provider hostname data geolocating Defendant Deniau to Lille, France.

4. Defendants BYZONA LTD and Evgenii Nazarov are the corporate and individual recipients of the revenue generated by the Site's unlawful distribution of Plaintiff's copyrighted works. Through a deliberately opaque payment-processing scheme routing transactions through fictitious "hosting" fronts (247host.eu and cloud2max.club), Defendants have for years received payments from Site members in a manner designed to conceal both the nature of the transactions and the identities of their true beneficiaries. Upon information and belief, Defendant John Doe #1 (TheMan), Defendant BYZONA LTD and its named manager Orlin Tsekov, and Defendant Evgenii Nazarov either (a) are the same natural person operating under multiple identities, or (b) are distinct individuals acting in concert as principals and nominees in a common enterprise to operate Gay-Torrents.org and to receive and conceal the proceeds thereof. The rapid substitution of successor merchant accounts when predecessors were terminated by regulated payment processors, the uninterrupted continuity of payment flow through replacement shells, and the shared functional use of the site-official email address info@gay-torrents.org all support the inference of common control. The true relationships among these Defendants will be established through expedited third-party discovery.

5. Despite receiving dozens of formal DMCA takedown notices between 2012 and 2025, the operator of Gay-Torrents.org has refused to remove the copyrighted content. Cross-referencing of formal notices sent in February 2024 and October 2025 reveals that forty-seven (47) of fifty-six (56) infringing links reported in February 2024 remained active on the Site twenty months later. Infringing content previously reported by Plaintiff remains accessible on the Site as of the date of this filing.

6. Rather than comply with lawful takedown demands, the Site's owner, Defendant TheMan, publicly characterized Plaintiff's copyright enforcement as "straight-up extortion,"

encouraged users to ignore cease and desist demands, and falsely claimed that the copyrighted content had been removed from the Site. Site administrators publicly endorsed these positions, and users of the Site engaged in a coordinated online campaign to discourage compliance, coach evasion of detection, attack Plaintiff personally, and conceal their identities through account deletion.

**THE PARTIES**

7. Plaintiff FlavaWorks Entertainment, Inc. is a corporation organized under the laws of the State of Illinois with its principal place of business at 2705 West Fulton Street, Chicago, Illinois 60612. Plaintiff is the exclusive licensee of all copyrights at issue in this action, pursuant to an Exclusive Copyright License and Enforcement Agreement dated March 1, 2024, between Phillip Bleicher, as Owner, and Plaintiff, as Licensee (the "License Agreement"). The License Agreement grants Plaintiff the exclusive rights under 17 U.S.C. § 106 in each of the works at issue, assigns to Plaintiff all accrued claims for infringement thereof (whether arising before or after the effective date of the License Agreement), and confers upon Plaintiff both legal and beneficial ownership of the licensed rights within the meaning of 17 U.S.C. § 501(b). Plaintiff therefore has standing to pursue the claims asserted herein.

8. Phillip Bleicher is the sole and exclusive owner of legal title to all copyrights at issue in this action. Mr. Bleicher acquired the copyrights at issue on July 13, 2022, pursuant to a Copyright Transfer Agreement between Flava Works, Inc. (an Illinois corporation and Mr. Bleicher's predecessor in the production and distribution of the works at issue) and Mr. Bleicher, under which Flava Works, Inc. irrevocably assigned all rights, title, and interest in the copyrights listed in Addendum A thereto to Mr. Bleicher. The Copyright Transfer Agreement was recorded with the United States Copyright Office on February 14, 2025, at Volume 15032, Document 534. A true

and correct copy of the Certificate of Recordation issued by the United States Copyright Office is attached hereto as Exhibit A. Mr. Bleicher has exclusively licensed those copyrights to Plaintiff, and has assigned to Plaintiff all accrued claims for infringement thereof, pursuant to the License Agreement described in Paragraph 7. Mr. Bleicher is also the sole shareholder and Chief Executive Officer of FlavaWorks Entertainment, Inc.

9. Defendant Ludovic Deniau ("Deniau") is an individual believed to reside in the Greater Lille Metropolitan Area, France. Plaintiff's last known email address for Deniau is ludovic.deniau@wanadoo.fr.

10. Defendant John Doe #1, known as "TheMan," is the owner and operator of Gay-Torrents.org. TheMan registered as user #4 on the Site on June 4, 2009, the date the Site was launched, and remains actively engaged in the operation of the Site. His registered email address is info@gay-torrents.org—the Site's official contact address. Upon information and belief, TheMan operates the Site through or in connection with Defendant BYZONA LTD. TheMan's true name and identity are unknown to Plaintiff and can only be ascertained through discovery.

11. Defendants John Does #2 through #8 are individuals who, at all times relevant to this Complaint, held the user class designation "administrator" on Gay-Torrents.org and were actively engaged in the administration, moderation, and promotion of the Site. Each such Defendant had and exercised the authority to remove infringing torrent listings, to ban infringing users, to issue warnings, to recruit new members through the Site's invite system, and to adopt or reject content-review decisions. Each such Defendant's true identity is unknown to Plaintiff and can only be ascertained through discovery.

12. Defendant John Doe #2, known as "sgmusuk" (user ID 18132), is a resident of the United Kingdom and an administrator of Gay-Torrents.org. Defendant sgmusuk joined Gay-

Torrents.org in April 2010 and has, as publicly displayed on the Site, generated over three hundred (300) terabytes of combined upload and download traffic on the Site.

13. Defendant John Doe #3, known as "jasepl" (user ID 47996), is a resident of the Republic of the Maldives and an administrator of Gay-Torrents.org. Defendant jasepl joined the Site in February 2011 and has, as publicly displayed on the Site, generated over nine (9) terabytes of combined upload and download traffic on the Site.

14. Defendant John Doe #4, known as "Marius" (user ID 83127), is a resident of the Republic of the Philippines and an administrator of Gay-Torrents.org. Defendant Marius joined the Site in March 2012 and has, as publicly displayed on the Site, generated over one hundred fifteen (115) terabytes of combined upload and download traffic on the Site.

15. Defendant John Doe #5, known as "ams_guy" (user ID 83193), is a resident of the Kingdom of the Netherlands and an administrator of Gay-Torrents.org. Defendant ams_guy joined the Site in March 2012 and has, as publicly displayed on the Site, generated over thirty-five (35) terabytes of combined upload and download traffic on the Site.

16. Defendant John Doe #6, known as "lucasneo" (user ID 83550), is a resident of the Federative Republic of Brazil and an administrator of Gay-Torrents.org. Defendant lucasneo joined the Site in April 2012 and has, as publicly displayed on the Site, generated over three (3) terabytes of combined upload and download traffic on the Site.

17. Defendant John Doe #7, known as "simlacroix" (user ID 110493), is a resident of the Kingdom of the Netherlands and an administrator of Gay-Torrents.org. Defendant simlacroix joined the Site in March 2013 and has, as publicly displayed on the Site, generated over seven (7) terabytes of combined upload and download traffic on the Site.

18. Defendant John Doe #8, known as "matthewmancs" (user ID 142315), is a resident of the United Kingdom and an administrator of Gay-Torrents.org. Defendant matthewmancs joined the Site in June 2014 and has, as publicly displayed on the Site, generated over four hundred seventy (470) terabytes of combined upload and download traffic on the Site—the largest volume of any user of the Site.

19. Defendant BYZONA LTD ("BYZONA") is a company organized under the laws of the Republic of Bulgaria, Registration Number EIK 201097680, with its registered office at 29 Gen. Gurko Str., entry A, app. 5, 6100 Kazanlak, Bulgaria. BYZONA is managed by Orlin Tsekov, Executive Manager. BYZONA operates 247host.eu, the purported web-hosting website through which Gay-Torrents.org VIP-membership payments are routed to Skrill and ultimately received by BYZONA.

20. Defendant Evgenii Nazarov ("Nazarov") is an individual whose residence is, upon information and belief, outside the United States. Nazarov is the named individual payee on the PayPal merchant account associated with cloud2max.club, which the Site uses as a second front-facing entity to receive payments from Site members. Nazarov's true residence and other identifying information are unknown to Plaintiff and can only be ascertained through discovery.

21. Defendants John Does #9 through #333 (the "Member Defendants") are three hundred twenty-five (325) individuals whose true names are unknown to Plaintiff but whose registered email addresses, Gay-Torrents.org usernames, and user identification numbers are known to Plaintiff. Each Member Defendant's Gay-Torrents.org username and user identification number are set forth in Exhibit D hereto. Each Member Defendant is, upon information and belief based on registration data, payment records, IP geolocation, email top-level domain, and/or regional email-provider analysis, a resident of the United States. Plaintiff has deliberately limited the

Member Defendants to this cohort of 325 individuals from among the approximately 20,671 currently active and more than 146,000 historically registered Site members, and has selected each Member Defendant based on individualized conduct in one or more of the following categories: (a) purchased a paid VIP membership from Gay-Torrents.org, thereby directly funding the Site's infringing operations alleged in Paragraphs 35, 38–45, and 46–50 below; (b) publicly participated in the coordinated forum campaign described in Section H below, thereby evidencing knowledge of Plaintiff's copyrights and a deliberate decision to continue infringing activity notwithstanding that knowledge; (c) uploaded, downloaded, and/or seeded one or more of Plaintiff's copyrighted works on or through the Site, as evidenced by forensic identifiers traced through Plaintiff's database to Plaintiff's copyrighted works; or (d) a combination of the foregoing. Plaintiff has in its possession, and has preserved, for each Member Defendant the registered email address associated with that Member Defendant's Gay-Torrents.org account and one or more IP addresses captured in connection with Site activity, and will produce such information to email-service providers and, where applicable, internet service providers pursuant to narrowly tailored subpoenas issued under the expedited discovery for which Plaintiff moves concurrently herewith. Plaintiff will seek leave to amend this Complaint to identify each Member Defendant by true name when such information becomes available through that discovery.

22. Upon information and belief, all Defendants are members, operators, administrators, or financial beneficiaries of Gay-Torrents.org.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and pursuant to the Copyright Act, 17 U.S.C. § 101 et seq. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those

claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

24. This Court has personal jurisdiction over Defendant Deniau because Deniau expressly consented to personal jurisdiction in Cook County, Illinois when he agreed to the Terms and Conditions of the paid-membership websites now owned by Plaintiff's principal, which provide in pertinent part: "you hereby consent to the personal jurisdiction and venue of the courts located in Cook County, Illinois."

25. This Court has personal jurisdiction over Defendants John Doe #1 (TheMan), John Does #2 through #8 (the administrators), BYZONA LTD, and Evgenii Nazarov because these Defendants purposefully directed tortious conduct at Plaintiff and at Illinois residents, causing injury to Plaintiff's business located in this district, and because Defendants are subject to personal jurisdiction in the State of Illinois under the Illinois Long Arm Statute, 735 ILCS 5/2-209. In the alternative, this Court has personal jurisdiction over all foreign Defendants as to Plaintiff's federal copyright claims pursuant to Federal Rule of Civil Procedure 4(k)(2), because those claims arise under federal law, those Defendants are not subject to the general personal jurisdiction of the courts of any one state, and the exercise of jurisdiction is consistent with the Fifth Amendment's due process requirements in light of Defendants' knowing and continuous targeting of the United States market through Gay-Torrents.org, including its substantial United States user base, payment receipts from United States residents, and infringement of copyrights registered with the United States Copyright Office.

26. This Court has personal jurisdiction over one or more of the Member Defendants (Does #9 through #333) on one or more of the following independent bases: (a) residence in the State of Illinois; (b) contractual consent to personal jurisdiction in Cook County, Illinois through agreement

to the Terms and Conditions of one or more FlavaWorks subscription websites in connection with a current or prior paid subscription, pursuant to the forum-selection clause quoted in Paragraph 24 above; (c) purposeful direction of tortious conduct at Plaintiff and at Illinois residents through participation in the common enterprise operated by Defendants TheMan and the Administrator Defendants and financially sustained by the payment-concealment scheme operated by Defendants BYZONA LTD and Nazarov; and/or (d) Federal Rule of Civil Procedure 4(k)(2) as to Plaintiff's federal copyright claims. Plaintiff's joinder of the Member Defendants in this District at this pleading stage is undertaken for one purpose only: to obtain, through expedited third-party discovery, the subscriber-level identifying information without which Plaintiff cannot proceed against any Member Defendant in any forum. Plaintiff does not seek, and will not pursue, the merits prosecution in this District of any Member Defendant who lacks an independent jurisdictional connection to this District. Within ninety (90) days of Plaintiff's receipt of subscriber information sufficient to determine a given Member Defendant's domicile, Plaintiff will file, as to that Member Defendant, one of the following: (i) Illinois-connected defendants — where the Member Defendant resides in Illinois, has contractually consented to jurisdiction in Cook County, Illinois through a FlavaWorks Terms-and-Conditions forum-selection clause, or is otherwise subject to the personal jurisdiction of this Court, a statement of intent to proceed in this action, accompanied by a short statement of the jurisdictional basis; (ii) out-of-district domestic defendants — where the Member Defendant resides in any other federal judicial district and no independent jurisdictional basis as to this District exists, a motion to sever pursuant to Federal Rule of Civil Procedure 21 and to dismiss the severed action without prejudice to Plaintiff's right to refile in the federal district of the Member Defendant's residence; and (iii) foreign or unidentified defendants — where the Member Defendant is identified as residing outside the

United States, or where the subscriber response is incomplete or non-productive, a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a) or such other disposition as the circumstances warrant. This commitment is binding on Plaintiff regardless of any Member Defendant's settlement willingness, and is made to assure the Court at the outset that this District is, and will remain, the merits forum only as to Member Defendants with an actual jurisdictional connection to this District.

27. Venue is proper in this district under 28 U.S.C. § 1391(b) because Plaintiff's principal place of business is located in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant Deniau expressly consented to venue in Cook County, Illinois.

## FACTS

### A. Plaintiff's Copyrighted Works and Enforcement Authority

28. Phillip Bleicher is the owner of copyrights in hundreds of adult entertainment videos, photographs, and related works distributed through a network of paid subscription websites operating under the FlavaWorks brand, including but not limited to: ThugBoy.com, CocoDorm.com, PapiCock.com, MixItUpBoy.com, RawRods.com, RawRio.com, FlavaFlix.com, and CocoStore.com.

29. Mr. Bleicher has obtained copyright registrations from the United States Copyright Office for the copyrighted works at issue in this action. The works at issue are identified by title and copyright registration number in Exhibit B. Each registration identified in Exhibit B was issued by the United States Copyright Office prior to the commencement of Defendants' infringement of the registered work.

30. Through the License Agreement described in Paragraph 7, Mr. Bleicher granted FlavaWorks Entertainment, Inc. exclusive rights under 17 U.S.C. § 106 in the works at issue and assigned to Plaintiff all accrued claims for infringement thereof. Plaintiff brings this action pursuant to that authority as exclusive licensee under 17 U.S.C. § 501(b).

31. Access to the copyrighted works requires a paid membership on the applicable FlavaWorks website. Members must agree to Terms and Conditions that expressly prohibit copying, downloading for redistribution, sharing, or otherwise distributing the copyrighted content. Copies of the applicable Terms and Conditions are attached as Exhibit C.

32. Plaintiff employs a proprietary forensic watermarking system through which, at the moment a FlavaWorks member initiates a download of a copyrighted video file from Plaintiff's member area, the file-delivery infrastructure generates a unique, thirty-two-character hexadecimal identifier and writes that identifier into the MPEG-4 copyright metadata field of the delivered file. The identifier is maintained in Plaintiff's internal database alongside the member account, download timestamp, source-file information, and delivery IP address, and uniquely ties the resulting copy of the file to the specific member and download session. The identifier is not reversible; it functions as a lookup key into Plaintiff's internal database.

**B. Gay-Torrents.org and Its Operations**

33. Gay-Torrents.org is a private, invite-only BitTorrent tracker that describes itself as "Your Private BitTorrent GAY Community." The Site has been in continuous operation since at least June 2009 and, as of the date of this filing, has approximately 20,671 currently active members and, since its launch, has registered more than 146,000 members.

34. The Site facilitates the unauthorized distribution of copyrighted content by providing torrent listings, a tracker that connects peers for file sharing, search functionality, forums, and

community infrastructure. While the Site does not host the actual video files on its servers, it provides the essential platform and coordination mechanism that enables users to share files peer-to-peer using the BitTorrent protocol. Images on the Site are hotlinked from third-party hosting services.

35. Gay-Torrents.org generates revenue through a paid VIP membership system. Users can purchase VIP memberships ranging from €14.95 (30 days) to €199.95 (3 years). VIP benefits include upload credits (1 EUR = 2 GB of upload capacity), immunity from auto-disable for low sharing ratios, immunity from automated warnings, unlimited download slots, and invitations to recruit new users—thereby explicitly incentivizing the uploading of additional infringing content.

36. The Site maintains a DMCA page at gay-torrents.org/dmca.php that claims to have "adopted an efficient notice and takedown procedure" and directs copyright owners to email info@gay-torrents.org. Despite this public representation, the Site has failed to comply with any of the dozens of DMCA notices sent by Plaintiff and by its predecessor copyright holder over a period spanning more than a decade. A copy of the Site's DMCA page, together with other representative Site documentation (including the Site's donation pages, donation FAQ, staff roster, and the "Banned Content" announcement described in Paragraph 65), is attached as Exhibit F.

37. Gay-Torrents.org is operated by Defendant TheMan as Owner and by seven (7) administrators (Defendants John Does #2 through #8).

## C. The Payment-Concealment Scheme

38. The payments that sustain Gay-Torrents.org's infringing operations are routed through a deliberately opaque payment-processing scheme designed to conceal the true nature of the transactions from users' financial institutions, from regulated payment processors' compliance staff, and from copyright owners seeking to identify and disrupt the flow of infringement proceeds.

The Site expressly advertises this concealment feature to users, stating on its VIP membership page: "On Your bank account/credit card statement You WON'T see anything related to Gay/Adult/Torrents site, so don't worry about this."

39. Plaintiff identified and documented two currently active payment channels through which Defendants receive the proceeds of infringement. Each channel is disguised as a legitimate web-hosting transaction.

40. Channel 1 (Skrill / BYZONA LTD). Gay-Torrents.org directs users to 247host.eu, a purported web-hosting site operated by Defendant BYZONA LTD. From 247host.eu, users are redirected to Skrill (pay.skrill.com), a regulated digital-wallet service operated by Skrill USA, Inc. (a licensed U.S. money-service business). Payments processed through Channel 1 are remitted to a Skrill merchant account held by or for the benefit of Defendant BYZONA LTD.

41. On April 1, 2026, Plaintiff conducted a test purchase through Channel 1, paying €34.95 EUR and receiving in return a 90-day VIP membership on Gay-Torrents.org. The Skrill transaction was labeled "VPS Plan — Invoice #72531," bore Transaction ID 6940568549 and session ID sid=6097ef3a97becb9a96cb4c325cdafac7, and upgraded Plaintiff's investigator's account on Gay-Torrents.org to VIP status within minutes of payment. No actual web-hosting services were provided or made available. The Channel 1 payment flow, together with contemporaneous Skrill receipt and corresponding Chase Bank statement records, is documented in Exhibit H.

42. Channel 2 (PayPal / Evgenii Nazarov). Gay-Torrents.org also directs users to cloud2max.club, a second purported web-hosting site. Payments through Channel 2 are processed through PayPal, Inc. (San Jose, California) to a merchant account in the name of Defendant Evgenii Nazarov, with the merchant statement descriptor identifying "CLOUD2MAX"—not Gay-Torrents.org.

43.  On April 1, 2026, Plaintiff conducted a parallel test purchase through Channel 2, paying €14.95 EUR (approximately $18.01 USD) and receiving in return a 30-day VIP membership. The PayPal transaction carried Transaction ID 6AK63036LE341043R, Merchant Transaction ID 6P798692U1199025A, and Invoice ID 72532—sequentially numbered with the Skrill invoice issued the same day. Again, no actual web-hosting services were provided or made available. The Channel 2 payment flow, together with contemporaneous PayPal receipt and corresponding Chase Bank statement records, is documented in Exhibit H.

44.  The two Channels share a common and revealing pattern. Each Channel is dressed in the trade garb of a web-hosting company; each uses a different shell entity as the named merchant of record; and each is designed to ensure that no record of the transaction—on a bank statement, in a PayPal notification, or in a Skrill receipt—identifies Gay-Torrents.org, the Site's actual operators, or the true nature of the service being purchased.

45.  This concealment structure is not incidental. It has evolved over years in direct response to prior enforcement. In September 2017, after complaints to PayPal concerning PayPal accounts info@cloud2max.eu and nadatanasov@comic.com, PayPal terminated those accounts. A 2017 DMCA notice by the copyright holder to Skrill concerning payments routed to Gay-Torrents.org likewise went unanswered. Rather than cease the unlawful use of those processors, Defendants responded by opening new PayPal and Skrill merchant accounts under successor shell entities (including cloud2max.club and the Nazarov-named PayPal account), and by expanding the number of front-facing "hosting" sites through which traffic is routed.

**D.  The Commercial Scale of the Site's Operations**

46. Gay-Torrents.org is not a hobby or noncommercial community. It is a paid, commercially operated enterprise. Since its launch in June 2009, the Site has registered more than 146,000 members, and as of the date of this filing has 20,671 currently active members.

47. The Site derives revenue from its members through a paid VIP-membership program—the mechanics and pricing of which are alleged in Paragraph 35 above—and through additional paid-access mechanisms available to users who have not been invited to the Site by an existing member. The Site itself describes this payment system in expressly commercial and automated terms, stating on its donation page: "Donation system is fully automatic. You will receive your VIP features immediately after payment."

48. On information and belief, Defendants' revenue from the Site's operations exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009. This figure is the product of Plaintiff's investigation and analysis of the Site's published pricing, its publicly visible donation records, and its registered member data, and is conservative in that it excludes cryptocurrency donations, advertising revenue, bonus-point sales, and pricing variations predating 2020, each of which would increase the true total.

49. Plaintiff's investigation has further identified, through publicly available data on the Site and through Plaintiff's own investigative analysis, in excess of 15,000 documented paid VIP-donation events made by more than 4,000 individual paying donors. Each such donation event is dated and is tied to the donor's specific member account on the Site, and each corresponds to one of the Site's VIP plans ranging from its current 30-day minimum (€14.95) to its multi-year tiers (up to €199.95).

50. The scale, continuity, and commercial character of these revenues demonstrate that Defendants' operation of the Site is a for-profit business—not a hobbyist community—that

depends on, and has for more than sixteen years been sustained by, the uploading, reproduction, and distribution of copyrighted works by its paying and invited members.

**E. History of DMCA Notices and Non-Compliance**

51. Between 2012 and 2025, Plaintiff and its predecessor copyright holder have sent dozens of formal DMCA takedown notices to Gay-Torrents.org and its hosting providers, internet service providers, and payment processors. None of these notices received a substantive response, and the infringing content was not removed. Representative notices attached as Exhibit E include:

a. February 22, 2024: Formal DMCA notice sent by Plaintiff to Gay-Torrents.org (info@gay-torrents.org) and Vivacom (Bulgarian internet service provider, Sofia, Bulgaria). Identified 56 infringing URLs. No response from the Site.

b. October 7, 2025: Formal DMCA notice sent by Plaintiff to info@gay-torrents.org identifying 86 infringing URLs. No response.

Additional formal DMCA notices sent between 2012 and 2023 are preserved and available at the Court's direction.

52. A cross-reference analysis of the February 2024 and October 2025 DMCA notices reveals that forty-seven (47) of the fifty-six (56) infringing links identified in February 2024 remained active on the Site in October 2025—a period of twenty months. Additionally, thirty-nine (39) new infringing links appeared in the October 2025 notice that were not present in the February 2024 notice, demonstrating that infringement on the Site increased rather than decreased during the twenty-month interval.

53. Infringing content previously reported in Plaintiff's DMCA notices remains accessible on Gay-Torrents.org as of the date of this filing.

**F. Defendant Deniau's Infringing Conduct**

54. Defendant Deniau purchased two separate paid subscriptions to websites now owned by Plaintiff's principal, each subject to Terms and Conditions prohibiting redistribution of copyrighted content and containing a Cook County, Illinois forum-selection and consent-to-jurisdiction clause. Both subscriptions are documented in Plaintiff's business records and in the payment-processor (CCBill) records of Plaintiff's predecessor:

a. ThugBoy.com (October 2004). CCBill Subscription ID 1061961394. Signed up October 8, 2004, from IP address 81.48.5.220 (Lille, France, France Telecom/Wanadoo). Email: Ludovic.Deniau@wanadoo.fr. Phone: 0670074732. Payment: MasterCard, BIN 513141. Billing name: "deniau ludovic." Billing address: 110 Boulevard de la Liberté, Lille 59000, France.

b. MixItUpBoy.com (February–March 2013). CCBill Subscription ID 0513054601000004183. Signed up February 23, 2013, from IP address 92.155.137.158 (Lille, France, France Telecom/Wanadoo). Email: ludovic.deniau@wanadoo.fr. Phone: 0670074732 (identical to the 2004 subscription). Payment: MasterCard, BIN 513141 (identical to the 2004 subscription). Billing name: "ludovic deniau" (transposition of the 2004 billing name). Billing address: 110 Boulevard de la Liberté, Lille 59000, France (identical to the 2004 subscription). The signup IP address resolved to an Orange/Wanadoo ISP hostname explicitly identifying Lille, France: "alille-656-1-204-158.w92-155.abo.wanadoo.fr."

55. The two subscriptions nine years apart are, based on identical email address, identical phone number, identical credit-card BIN, identical billing address, identical billing name (transposed), and identical IP-geolocation region (Lille, France, Orange/Wanadoo), attributable to the same natural person.

56. During his MixItUpBoy.com subscription in February and March 2013, Defendant Deniau systematically downloaded dozens of copyrighted video files from the MixItUpBoy.com member area, totaling approximately twenty-two (22) gigabytes. Defendant Deniau cancelled his subscription approximately thirty days after purchase, on the same day as his final download session—a pattern consistent with bulk acquisition for redistribution rather than ordinary consumption.

57. Each video file downloaded by Defendant Deniau bore, at the time of download, a unique cryptographic forensic identifier embedded in the MPEG-4 metadata of the file. The identifier was linked in Plaintiff's internal database to Defendant Deniau's FlavaWorks member account, his download session, and the source-file information at the moment of delivery. No other FlavaWorks subscriber received the same identifier with respect to the same downloaded file.

58. More than thirty (30) video files bearing forensic identifiers linked in Plaintiff's database to Defendant Deniau's February–March 2013 download sessions have been located on Gay-Torrents.org. Each such file bears a distinct forensic identifier traced through Plaintiff's database to Defendant Deniau; each identifier uniquely identifies the copy of the file delivered to Defendant Deniau as the source from which the copy located on Gay-Torrents.org is derived. The identifiers, their corresponding database records, and the file-level MediaInfo data confirming the presence of the identifiers in the MPEG-4 metadata of the Gay-Torrents.org copies are maintained by Plaintiff in the ordinary course of its copyright-enforcement program and will be produced in discovery subject to such protective order as this Court may enter; they are also available for this Court's *in camera* inspection upon request.

59. In 2016, a cease and desist letter was sent to Defendant Deniau at his then-known residential address in France regarding his unauthorized distribution of copyrighted works. Defendant Deniau did not respond to the letter or cease his conduct.

**G. Defendants' Refusal to Comply and Public Encouragement of Infringement**

60. As early as November 2012, users of Gay-Torrents.org openly discussed on the Site's public forum the $1.5 million default judgment entered in *Flava Works, Inc. v. Fisher*, No. 1:12-cv-01888 (N.D. Ill. Nov. 1, 2012), against another infringer of Plaintiff's predecessor in interest, and openly discussed the forensic-identifier technology by which that infringer had been identified—the same class of technology still used by Plaintiff today. The thread, titled "If ur a paying member of ANY online porn," remains publicly accessible on the Site as of the date of this filing and has been continuously accessible for more than thirteen (13) years. Participants in the thread included Site users with upload totals in excess of ninety-seven (97) terabytes and thirty-nine (39) terabytes respectively. The thread demonstrates that Defendants and the users of the Site had actual knowledge, for more than a decade preceding this action, of Plaintiff's predecessor's copyrights, of the forensic-identifier technology used to detect unauthorized redistribution on peer-to-peer networks, and of the legal consequences of infringement of those copyrights; and that Defendants nonetheless continued to operate, administer, and participate in the Site notwithstanding that knowledge. The thread is included within Exhibit G (Forum Threads).

61. On December 4, 2025, Defendant TheMan posted on the Gay-Torrents.org forum in response to a user ("kevinatl") who reported receiving a cease and desist letter from Plaintiff. TheMan, posting under his "Owner" designation, stated: "This is straight-up extortion, and people shouldn't fall for it." TheMan further encouraged users to "block" Plaintiff, falsely claimed that

"We deleted all of their stuff a long time ago," and accused Plaintiff of "uploading their own shitty content themselves just so they can blackmail users afterwards."

62. TheMan's claim that the copyrighted content had been deleted is demonstrably false. As set forth above, 47 of 56 infringing links reported in February 2024 remained active in October 2025, and infringing content remains accessible on the Site as of the date of this filing.

63. On the same forum thread, on December 6, 2025, Defendant TheMan publicly posted a further message directing the user kevinatl to respond to TheMan's private message, evidencing direct coordination between the Site operator and individual members in resisting Plaintiff's enforcement efforts.

64. On December 27, 2025, Defendant matthewmancs, posting under his "Administrator" designation, responded to the same forum thread by endorsing TheMan's statement, writing: "YES! THIS REMAINS THE ANSWER."

65. On or about January 21, 2026, Defendant Marius, posting under his "Administrator" designation, edited the Site's "Banned Content" announcement—a pre-existing announcement first published on the Site on August 19, 2021 and used by Defendants since that date to ban other studios from the Site—to add "Flava Works and its affiliates" to the list of banned studios. The announcement listed FlavaWorks and numerous FlavaWorks-branded and affiliated websites by name. The pre-existence of the "Banned Content" announcement demonstrates that Defendants have maintained, since at least 2021, an operational mechanism for banning entire studios from the Site. Notwithstanding that mechanism, and notwithstanding the dozens of DMCA notices Plaintiff and its predecessor have sent since 2012, Defendants chose not to invoke that mechanism as to FlavaWorks until January 2026—more than a month after the coordinated forum campaign described in Section H below became publicly active. Further, the ban applied only to new uploads,

with the announcement stating: "Staff will be deleting existing torrents without prejudice to the uploaders." Despite this representation, existing infringing content remains accessible on the Site as of the date of this filing.

66. On March 18, 2026—nearly two months after the purported "Banned Content" announcement—Defendant sgmusuk, posting under his "Administrator" designation, responded to another user who had received a cease and desist letter from Plaintiff by stating: "None of their content is even on the site anymore." This statement was demonstrably false. At the time Defendant sgmusuk made it, infringing content previously reported in Plaintiff's DMCA notices was—and remains—accessible on the Site. Defendant sgmusuk's statement continued the false "we deleted it" narrative that Defendants had used since at least December 2025 to dissuade compliance and to mislead users into believing that Plaintiff's enforcement was baseless.

67. Defendants' "Banned Content" announcement, repeated false assurances, and public denials further demonstrate that Defendants had actual knowledge that copyrighted content was being distributed on the Site, had the ability to remove it, and chose not to do so in a complete and timely manner.

## H. Defendants' Coordinated Forum Campaign to Induce Non-Compliance and Conceal Wrongdoing

68. The forum thread described above (titled "FLAVAWORKS cease and desist email/letter") became, and remains, a focal gathering place for members of the Site to coordinate their response to Plaintiff's enforcement. The thread has, as of the date of this filing, been in continuous public operation on Gay-Torrents.org for approximately four and a half months, spans multiple pages, and is populated with posts by Defendant TheMan, by Administrator Defendants matthewmancs and sgmusuk, and by numerous members of the Site whose true identities are

unknown to Plaintiff and will be pursued in discovery. Plaintiff has preserved the thread and incorporates its contents by reference.

69. The posts in the thread evidence a consistent and coordinated campaign by Site members and administrators to: (a) encourage recipients of Plaintiff's cease and desist demands to ignore those demands and refuse to comply; (b) instruct one another on techniques for evading detection of their infringing activity, including by adopting commercial VPN services, seedbox services, and by selecting Chicago, Illinois as a routing location for VPN traffic specifically in connection with torrenting on Gay-Torrents.org; (c) promote the false narrative that the copyrighted content has been "deleted" from the Site; (d) attack Plaintiff and its principal Phillip Bleicher personally, including by posting links to third-party websites characterizing Plaintiff's principal in disparaging terms; and (e) speculate about the mechanics of Plaintiff's detection methods, for the express purpose of helping fellow members defeat future detection.

70. The forum campaign is not confined to rhetoric. In multiple instances, members who publicly posted in the thread either (i) themselves acknowledged receipt of Plaintiff's enforcement materials; (ii) had Site-profile upload totals reflecting multiple terabytes—in several cases tens of terabytes, and in one case in excess of two hundred terabytes—of content uploaded to Gay-Torrents.org; or (iii) both. Their participation in the thread evidences both knowledge of Plaintiff's copyrights and a deliberate decision to continue infringing activity notwithstanding that knowledge.

71. The forum campaign also evidences consciousness of wrongdoing through subsequent account deletion. After Plaintiff initiated enforcement activity and the forum thread became active, multiple Site members who had publicly participated in the thread and, on Plaintiff's information and belief, had received Plaintiff's enforcement materials subsequently deleted their Site accounts,

so that their usernames and profile information no longer appear on the Site and their posts in the thread are now attributed only to anonymous placeholder identifiers ("unknown[XXXX]"). These deletions post-date Plaintiff's enforcement correspondence and are consistent with a deliberate effort to frustrate identification, service, and the preservation of evidence. Plaintiff has preserved the thread contents as displayed prior to the deletions.

72. Defendants TheMan and the seven Administrator Defendants, having continuous administrative control over the Site and its forum, at all relevant times had actual knowledge of the contents of the forum thread, had the ability to moderate, remove, or lock the thread, and took no action to stop the coordinated campaign of non-compliance. To the contrary, TheMan and matthewmancs affirmatively contributed to the campaign, and sgmusuk subsequently contributed to the campaign, by posting in the thread under their official "Owner" and "Administrator" designations.

## I. Defendants John Does #9 Through #333 (the Member Defendants)

73. The Member Defendants (Does #9 through #333) are three hundred twenty-five (325) U.S.-resident members of Gay-Torrents.org, each of whom, as set forth in greater detail in Paragraph 21 and identified by username and user identification number in Exhibit D, is alleged to have engaged in one or more of the following categories of conduct in concert with the named Defendants and with the other Member Defendants: (a) purchase of a paid VIP membership that directly funded the Site's infringing operations; (b) public participation in the coordinated forum campaign described in Section H above; and/or (c) uploading, downloading, and/or seeding one or more of Plaintiff's copyrighted works on or through the Site, as evidenced by forensic identifiers traced through Plaintiff's database to Plaintiff's copyrighted works.

74. By nature of the BitTorrent protocol, each Defendant who downloaded copyrighted works simultaneously uploaded (or "seeded") portions of those works to other users, thereby both reproducing and distributing copyrighted content.

## COUNT I
### Direct Copyright Infringement – 17 U.S.C. § 501
*(As to Defendants Deniau, TheMan (Doe #1), the Administrators (Does #2–#8), and the Member Defendants (Does #9–#333))*

75. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

76. Defendants, without authorization or license, have reproduced and distributed (and, in the case of the user and administrator Defendants, have also made available for further reproduction and distribution by others through the BitTorrent protocol) copyrighted works owned by Plaintiff's principal and exclusively licensed to Plaintiff, in violation of 17 U.S.C. § 106(1) and 17 U.S.C. § 106(3).

77. Defendants' conduct interferes with the exclusive rights to reproduce, distribute, and display the copyrighted works under 17 U.S.C. § 106.

78. Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

79. As a result of Defendants' direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT II
### Contributory Copyright Infringement
*(As to All Defendants)*

80.  Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

81.  On information and belief, Defendants aided, abetted, encouraged, and materially contributed to the infringement of copyrights by copying, uploading, posting, downloading, seeding, and/or distributing copyrighted works without permission.

82.  Defendants John Doe #1 (TheMan) and John Does #2 through #8 (the administrators) materially contributed to infringement by operating and administering the Gay-Torrents.org platform, providing the tracker infrastructure, maintaining torrent listings, refusing to remove infringing content despite actual knowledge of the infringement, and presiding over the forum campaign described in Section H above.

83.  Defendants BYZONA LTD and Nazarov are contributorily liable because, as alleged in Paragraph 4 above, they are (upon information and belief) either identical to Defendant TheMan or act in concert with him as principals and nominees in a common enterprise to operate Gay-Torrents.org and to receive and conceal the proceeds thereof. They do not provide a general-purpose service to the public with only incidental knowledge of infringing use; their purported "web-hosting" fronts (247host.eu and cloud2max.club) are shell entities that provide no actual web-hosting services to the public and exist for the sole purpose of receiving payments for Gay-Torrents.org VIP memberships and concealing the identities of the Site's true beneficiaries from regulated payment processors, financial institutions, and copyright owners. That purpose-built concealment infrastructure both (a) constitutes affirmative inducement of and active encouragement of the Site's infringing activity by sustaining the financial incentive structure for uploading under which paying VIP members receive upload credits, and (b) is "tailored to infringement" within the meaning of *Cox Communications, Inc. v. Sony Music Entertainment*, 607

U.S. ___ (2026), *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), and *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), because the shell entities are not capable of any substantial noninfringing use.

84. Defendants had actual or constructive knowledge of the infringing activity. This knowledge is demonstrated by, among other things: (a) the dozens of DMCA notices sent over more than a decade; (b) TheMan's December 2025 forum post acknowledging Plaintiff's enforcement efforts; (c) the January 2026 "Banned Content" announcement expressly naming Plaintiff and numerous FlavaWorks-branded and affiliated websites by name; (d) Defendant sgmusuk's March 2026 public statement on behalf of Site administration concerning Plaintiff's content on the Site; and (e) the Site's own DMCA page acknowledging the existence of copyright infringement procedures.

85. As a result of Defendants' contributory copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

**COUNT III**
**Vicarious Copyright Infringement**
*(As to Defendants TheMan, Administrators (Does #2–#8), BYZONA LTD, Nazarov, and the Member Defendants (Does #9–#333))*

86. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

87. Defendants TheMan and Does #2 through #8 had the right and ability to supervise and control the infringing activity on Gay-Torrents.org. As the owner and administrators of the Site, they had the ability to remove infringing torrent listings, ban infringing users, disable downloads, and shut down the Site entirely.

88. Defendants BYZONA LTD and Nazarov had the right and ability to supervise and control the infringing activity indirectly by ceasing to process payments for the Site's VIP memberships. Payment-processor withdrawal has historically been, and would here be, sufficient to disable or materially diminish the Site's ability to continue operating.

89. Defendants derived a direct financial benefit from the infringing activity. The Site's VIP membership system generates revenue in euros, and the availability of copyrighted content serves as the primary draw for users to visit the Site and purchase VIP memberships. As alleged in Paragraphs 46 through 50 above, Defendants' revenue from the Site's infringing operations, on information and belief, exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009.

90. Despite having actual knowledge of the infringement, the right and ability to stop it, and a financial interest in the infringing activity, Defendants failed to take reasonable steps to prevent or stop the infringement.

91. As a result, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

### COUNT IV
### Inducement of Copyright Infringement
*(As to Defendants TheMan and Administrators (Does #2–#8))*

92. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

93. Defendants TheMan and the administrators, through their operation and administration of Gay-Torrents.org, intentionally induced, encouraged, and promoted copyright infringement by creating and maintaining a platform whose primary purpose is the unauthorized distribution of copyrighted works.

94. The Site's VIP membership system explicitly incentivizes the uploading of infringing content by awarding upload credits in exchange for payment (1 EUR = 2 GB of upload capacity) and granting ratio immunity to paying members. These features are designed to encourage users to upload more copyrighted content.

95. TheMan's December 2025 forum post actively encouraging users to ignore Plaintiff's cease and desist demands, matthewmancs' endorsement of that position, sgmusuk's March 2026 continuation of the "we deleted it" narrative, and the administrators' tolerance of the coordinated forum campaign described in Section H all constitute affirmative acts of inducement to continue infringing activity.

96. As a result, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

## COUNT V
### Unjust Enrichment
*(As to Defendants Deniau, TheMan, Administrators (Does #2–#8), BYZONA LTD, and Nazarov)*

97. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

98. Defendants have been unjustly enriched at Plaintiff's expense through conduct that includes elements beyond mere copyright infringement. Defendant Deniau breached the contractual restrictions of his paid FlavaWorks subscriptions by redistributing content he had agreed not to redistribute, and retained the economic benefit of his paid membership access while using that access to supply Gay-Torrents.org with copyrighted material—an enrichment arising from breach of contract, not from the infringement itself. Defendants TheMan, the administrators, BYZONA LTD, and Nazarov derived revenue through a payment-concealment scheme designed to deceive regulated payment processors, their users' financial institutions, and copyright owners

about the nature and beneficiaries of transactions—an enrichment arising from affirmative deception and breach of duties owed to regulated financial intermediaries, independent of any underlying infringement. On information and belief, and as alleged in Paragraphs 46 through 50 above, the amount of Defendants' unjust enrichment exceeds €7,000,000 (approximately $7.4 million USD) in revenue derived since the Site's launch in 2009, plus such additional amounts as may be established through discovery. To the extent any component of this claim is preempted by 17 U.S.C. § 301, Plaintiff pleads this Count in the alternative to its federal copyright claims.

99. Defendants' enrichment was at the expense of Plaintiff's principal, who lost revenue from potential subscribers who obtained copyrighted content for free through Gay-Torrents.org instead of purchasing legitimate subscriptions.

100. It would be unjust and inequitable for Defendants to retain these benefits without compensating Plaintiff.

## COUNT VI
### Civil Conspiracy
*(As to Defendants Deniau, TheMan, Administrators (Does #2–#8), BYZONA LTD, Nazarov, and the Member Defendants (Does #9–#333))*

101. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

102. Defendants, acting in concert and with a common purpose, engaged in a conspiracy the object of which included, in addition to and independent of any copyright infringement, (a) the active concealment from regulated payment processors, financial institutions, and copyright owners of the true beneficial recipients of Gay-Torrents.org's revenue; (b) the fraudulent misrepresentation of commercial transactions through the substitution of shell-entity merchant names for the true merchant identity; (c) the coordinated evasion of civil copyright enforcement

through a public campaign described in Section H directed at coaching Site members to delete evidence, adopt VPN and seedbox services, and refuse to respond to Plaintiff's enforcement materials; and (d) for the user and administrator Defendants, the breach of contractual and terms-of-service obligations owed to Plaintiff and its predecessor in interest in connection with FlavaWorks paid memberships. Defendants BYZONA LTD and Nazarov, through the payment-concealment scheme described in Section C, received and routed the proceeds of the Site's operations while deliberately concealing the true nature of the transactions. To the extent any component of this claim is preempted by 17 U.S.C. § 301, Plaintiff pleads this Count in the alternative to its federal copyright claims.

103. Each Defendant's acts were performed in furtherance of the conspiracy and caused Plaintiff to suffer damages.

104. As a result of the conspiracy, Defendants are jointly and severally liable for all damages suffered by Plaintiff.

## COUNT VII
### Fraudulent Concealment
*(As to Defendants TheMan, BYZONA LTD, and Nazarov)*

105. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though fully set forth herein.

106. Defendants TheMan, BYZONA LTD, and Nazarov engaged in affirmative acts of concealment designed to hinder Plaintiff's investigation and enforcement of its copyrights, and to prevent Plaintiff, users' financial institutions, payment processors, and law enforcement from identifying the true beneficiaries of Gay-Torrents.org's operations and the true nature of the transactions through which the Site is funded.

107. The affirmative acts of concealment include, without limitation: (a) routing VIP-membership payments through at least two separate shell entities (247host.eu and cloud2max.club), each disguised as a legitimate web-hosting business; (b) using rotating merchant names ("BYZONA LTD" and "CLOUD2MAX") to prevent cross-identification; (c) affirmatively advertising to users that the Site's transactions will not appear on their bank or credit-card statements in a manner identifying Gay-Torrents.org or its nature; (d) opening successor merchant accounts under new shell entities each time a prior merchant account is terminated by the processor; (e) falsely claiming on the Site's DMCA page to operate a notice-and-takedown procedure while making no meaningful response to the dozens of notices received over more than a decade; (f) falsely claiming publicly, through Defendant TheMan in December 2025 and through Defendant sgmusuk in March 2026, that the copyrighted content had been deleted from the Site when in fact it remained accessible; and (g) tolerating and administering a public forum on the Site in which members were coached to delete their accounts, adopt VPN and seedbox services, and otherwise conceal their identities and activity from Plaintiff, after which multiple such members in fact deleted their Site accounts so that their identifying information no longer appeared on the Site. Defendants further concealed from the public, from regulated payment processors, and from copyright owners the commercial scale of the Site's revenue, which as alleged in Paragraphs 46 through 50 above, on information and belief, exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009.

108. The success of Defendants' concealment scheme is further evidenced by its operation against regulated financial institutions. In 2017, PayPal, Inc. terminated the merchant accounts associated with info@cloud2max.eu and nadatanasov@comic.com following complaints concerning payments processed to Gay-Torrents.org. Rather than cease the unlawful use of PayPal,

Defendants caused successor merchant accounts to be opened under new shell identities—including the cloud2max.club account in the name of Defendant Nazarov—through which the same revenue stream from Gay-Torrents.org continued to be processed. Similarly, in 2017, Plaintiff's predecessor in interest sent a formal DMCA notice to Skrill concerning payments routed to Gay-Torrents.org; notwithstanding that notice, Skrill-processed payments to Defendant BYZONA LTD for Gay-Torrents.org VIP memberships have continued uninterrupted through the date of this filing. Defendants' ability to maintain, replace, and re-establish merchant accounts with regulated processors despite prior terminations and formal infringement notices demonstrates both the effectiveness of Defendants' concealment and its deliberate design.

109. These acts of concealment were material. They deprived Plaintiff and third parties of information needed to enforce copyrights, pursue civil remedies, and cooperate with regulated financial intermediaries. They prolonged the period over which infringement continued unabated.

110. Plaintiff justifiably relied, and reasonably was entitled to rely, on the following: (a) that regulated payment processors operating under applicable anti-money-laundering, know-your-customer, and merchant-verification frameworks—including Skrill USA, Inc. (NMLS ID 935195) and PayPal, Inc.—would accurately identify the true beneficial owners of merchant accounts processing commercial transactions through their systems; (b) that merchant-identification information publicly displayed in connection with processed transactions (including the merchant names "BYZONA LTD" and "CLOUD2MAX") would correspond to the actual businesses conducting the underlying transactions rather than to shell entities designed to conceal the true operator; and (c) that the Site's public DMCA-compliance representations at gay-torrents.org/dmca.php would be honored in substance rather than serve as a false-front response mechanism. But for Defendants' affirmative concealment, Plaintiff would have been able to

identify the true recipients of the Site's revenue significantly earlier and to pursue enforcement against those recipients before the harm to Plaintiff's copyrights accrued to its current magnitude. As a direct and proximate result of Defendants' concealment, Plaintiff suffered injuries separate and apart from the underlying copyright infringement, including without limitation: (i) the costs of multi-year investigative efforts to trace the Site's revenue flow through successive shell entities; (ii) the costs of test purchases, forensic watermark analysis, and third-party-subpoena practice necessary to defeat Defendants' concealment; (iii) the delay in identifying the proper parties to sue, during which time additional infringement of Plaintiff's copyrights continued to accrue; and (iv) the dissipation of potentially recoverable assets that occurred during the period in which Defendants' true identities remained concealed.

111. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered damages in an amount to be determined at trial, and is entitled to punitive damages for Defendants' willful and deliberate misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FlavaWorks Entertainment, Inc. respectfully requests that this Honorable Court enter the following relief:

1. A judgment in favor of Plaintiff and against all Defendants on each Count of this Complaint;

2. An award of actual damages sustained by Plaintiff as a result of Defendants' infringement, the amount of which is to be determined at trial;

3. In the alternative, and at Plaintiff's election pursuant to 17 U.S.C. § 504(c)(1), an award of statutory damages for each of the works identified in Exhibit B, each of which was registered with the United States Copyright Office before the commencement of any infringement alleged

herein and therefore qualifies for statutory damages under 17 U.S.C. § 412, including enhanced statutory damages of up to $150,000 per work infringed for Defendants' willful infringement pursuant to 17 U.S.C. § 504(c)(2);

4. Disgorgement of any profits Defendants have derived from their infringement of Plaintiff's Intellectual Property;

5. A temporary restraining order, preliminary injunction, and permanent injunction against Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them, from:

    a. Reproducing, distributing, displaying, or making available for download copyrighted works through Gay-Torrents.org or any other website or platform;

    b. Operating, maintaining, or administering Gay-Torrents.org or any successor, mirror, or affiliated website for the purpose of distributing copyrighted content without authorization;

    c. Encouraging, inducing, or assisting any third party to infringe copyrights owned by Plaintiff's principal;

    d. Transmitting, remitting, receiving, or processing any payment whose beneficial recipient is the operator of, or contributor to, Gay-Torrents.org;

    e. Deleting, destroying, altering, or otherwise disposing of any records, user data, account information, forum posts, transaction records, or other materials relevant to this action;

6. An order freezing (a) the Skrill payment account(s) associated with Gay-Torrents.org, BYZONA LTD, and its principal Orlin Tsekov, and (b) the PayPal merchant account associated with cloud2max.club held by or for the benefit of Evgenii Nazarov, together with any successor

or replacement merchant accounts opened by Defendants for the purpose of receiving the proceeds of the Site's operations, to prevent the dissipation of assets during the pendency of this action, in an amount not less than €7,000,000 (approximately $7.4 million USD), reflecting the revenue Defendants are alleged on information and belief to have derived from the Site's infringing operations since 2009;

7. An order directing Cloudflare, Inc. to preserve all records in its possession, custody, or control relating to the domain gay-torrents.org, including account records, DNS configuration records, log records, and communications with the customer of record, pending the Court's entry of final judgment in this action, without directing Cloudflare to suspend, disable, or interfere with the operational functioning of the domain during the pendency of this action;

8. Authorizing Plaintiff to serve expedited third-party subpoenas on (a) Skrill USA, Inc., PayPal, Inc., Cloudflare, Inc., and Tucows, Inc., to identify account holders, billing records, transaction histories, origin-server IP addresses, forum-posting records, and account-deletion records relating to the named Defendants and the Gay-Torrents.org enterprise; and (b) the email-service providers corresponding to the registered email addresses of the Member Defendants (including without limitation Google LLC, Microsoft Corporation, Apple Inc., and Yahoo! Inc.), and, where applicable as a secondary means of identification, the internet service providers corresponding to IP addresses associated with the Member Defendants, to identify subscriber names, alternate and recovery email addresses, recovery telephone numbers, account creation dates and creation IP addresses, IP address histories, and associated billing information, in each case corresponding to the registered email addresses and/or IP addresses maintained by Plaintiff in connection with the Member Defendants' Gay-Torrents.org accounts and produced to the relevant providers under seal;

9.  Pursuant to 17 U.S.C. § 503, an order impounding and requiring Defendants to deliver up for destruction all copies of copyrighted works in their possession, custody, or control, and all records or devices by means of which such copies have been reproduced or distributed;

10.  An award of Plaintiff's costs of this action, including reasonable attorney's fees pursuant to 17 U.S.C. § 505;

11.  An award of punitive damages as deemed just and proper by this Court, including in connection with Count VII (Fraudulent Concealment);

12.  An order requiring Defendants to submit to the Court and serve upon Plaintiff a written report, under oath, setting forth the manner and form in which Defendants have complied with any injunction entered in this action;

13.  Such other and further relief as this Court deems just, reasonable, and equitable.


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues properly triable by jury in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


DATED: April 28, 2026

Respectfully Submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
FlavaWorks Entertainment, Inc.
2705 West Fulton Street
Chicago, IL 60612
Telephone: 305-438-9450
Email: Corinthia@flavaworks.com

Counsel for Plaintiff
FlavaWorks Entertainment, Inc.

## VERIFICATION OF COMPLAINT

I, Phillip Bleicher, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am the Chief Executive Officer and sole shareholder of Plaintiff FlavaWorks Entertainment, Inc. ("FlavaWorks"). I am duly authorized to make this verification on behalf of FlavaWorks.

2. I have read the foregoing Verified Complaint in the above-captioned action.

3. The factual allegations contained in the Verified Complaint are true and correct to the best of my knowledge, information, and belief, based on the business records of FlavaWorks Entertainment, Inc., the records of its predecessor in interest Flava Works, Inc., and my personal knowledge of the matters alleged.

4. Allegations made on information and belief are so stated; as to all such allegations, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2026, at Chicago, Illinois.

_____
Phillip Bleicher
Chief Executive Officer
FlavaWorks Entertainment, Inc.