**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FlavaWorks Entertainment, Inc., )<br><br>      Plaintiff, )<br><br>v. )<br><br>Ludovic Deniau, )<br><br>John Doe #1 ("TheMan"), )<br>Owner of Gay-Torrents.org, )<br><br>John Does #2 through #8, )<br>Administrators of Gay-Torrents.org )<br>(sgmusuk, jasepl, Marius, ams_guy, )<br>lucasneo, simlacroix, matthewmancs), )<br><br>BYZONA LTD, )<br>a Bulgarian company, )<br><br>Evgenii Nazarov, an individual, )<br><br>John Does #9 through #333, )<br>Identified by Gay-Torrents.org usernames, )<br><br>      Defendants. ) | Case No. 1:26-cv-04857<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION FOR LEAVE TO TAKE EXPEDITED DISCOVERY**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(d)(1),**
**AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiff FlavaWorks Entertainment, Inc. ("FlavaWorks" or "Plaintiff") respectfully moves

this Court, pursuant to Federal Rule of Civil Procedure 26(d)(1), for leave to take expedited

discovery prior to the parties' Rule 26(f) conference. Specifically, Plaintiff seeks leave to serve

Rule 45 subpoenas on (a) the two payment processors through which Defendants receive the

proceeds of the infringement alleged in the Complaint (Skrill USA, Inc. and Skrill Limited, as to

the BYZONA LTD merchant account; and PayPal, Inc., as to the Evgenii Nazarov

"CLOUD2MAX" merchant account); (b) Cloudflare, Inc. and Tucows, Inc., for records relating to the gay-torrents.org domain, including account holder identification, billing records, origin-server IP addresses, DNS configuration records, and account communications, to identify the operator of the Site and the Site's true upstream hosting infrastructure; (c) the four principal email-service providers at which Plaintiff has preserved registered email addresses for the 325 John Doe Member Defendants (Google LLC, Microsoft Corporation, Apple Inc., and Yahoo! Inc.); and (d) internet service providers subsequently identified through that discovery. The relief requested is narrowly tailored to the identification and cash-flow information that Plaintiff cannot obtain without court process and cannot afford to defer until the Rule 26(f) conference.

Plaintiff's showing rests on three points. First, Plaintiff satisfies the good-cause standard that governs pre-conference discovery under Rule 26(d)(1). Second, *Pacific Century International Ltd. v. Does 1-37*, 282 F.R.D. 189 (N.D. Ill. 2012), does not bar the relief requested: the factual basis on which the 325 John Doe Member Defendants were selected is individualized, conduct-based, and supported by preserved forensic evidence for each Doe — not the swarm-IP-address shotgun model the *Pacific Century* court properly rejected. Third, Plaintiff commits on the record to a 30-day subscriber-notification protocol and a rolling severance protocol (with an eighteen-month outer backstop) tied to the subpoena recipients' actual production timelines, each of which protects subscriber privacy and docket economy and further distinguishes this Motion from the abuse patterns that have generated judicial skepticism of expedited-discovery requests in Doe-defendant cases.

**BACKGROUND**

The factual basis for this Motion is set forth in the Verified Complaint and in the accompanying Declaration of Phillip Bleicher ("Bleicher Declaration"), which Plaintiff incorporates by reference. In brief:

Defendants operate, administer, and knowingly fund Gay-Torrents.org, a private BitTorrent tracker that has been operating since 2009 and whose operations depend on the unauthorized reproduction and distribution of Plaintiff's copyrighted works. (Compl. ¶¶ 2, 38–51; Bleicher Decl. ¶¶ 13–16.) Plaintiff has conducted controlled test purchases through the two payment channels identified in the Complaint and has preserved the resulting merchant-account records, including Skrill Invoice #72531 and PayPal Invoice #72532 issued sequentially on April 1, 2026. (Compl. ¶¶ 39–45; Bleicher Decl. ¶¶ 17–20.)

Plaintiff's Member Defendants were selected from the Site's active and historical membership of more than 146,000 registered users according to four specific conduct categories: (a) VIP-payment conduct; (b) forum-campaign conduct; (c) upload-traceback conduct via Plaintiff's forensic watermarking system; and (d) combinations of the foregoing. (Bleicher Decl. ¶¶ 28–29.) For each of the 325 Member Defendants, Plaintiff has preserved the registered email address and one or more IP addresses captured in connection with that Member Defendant's Site activity; Plaintiff does not have, and cannot obtain without court process, the subscriber-level identifying information maintained by the email-service providers. (Bleicher Decl. ¶¶ 29–32.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(d)(1) provides that, absent a stipulation, court order, or Rule exception, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." The Rule expressly authorizes the Court to grant leave to take discovery before that conference. Fed. R. Civ. P. 26(d)(1). Courts in this District, applying

the "good cause" standard articulated in *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002), have routinely granted leave to take expedited discovery in copyright cases in which the identities of Doe defendants are known only to third-party internet service providers or email providers.

Good cause exists where (1) the plaintiff has made a concrete showing of a prima facie claim, (2) the discovery requests are specific, (3) there are no alternative means to obtain the information, (4) the information is necessary to advance the claims, and (5) the intrusion on the subject's privacy interests is proportionate. See *Semitool*, 208 F.R.D. at 276. Each factor is satisfied here.

## ARGUMENT

### I. *Plaintiff Has Shown Good Cause for Expedited Discovery.*

A. Plaintiff has made a concrete showing of a prima facie case. Plaintiff owns the copyrights at issue; the copyrighted works are registered with the United States Copyright Office; each registration preceded the specific infringement for which relief is sought; and the infringement is documented, contemporaneous, and continuing. (Compl. ¶¶ 28–30, 52–54; Bleicher Decl. ¶¶ 3–12, 17–22.) Plaintiff's investigation has produced, for the 325 Member Defendants, individualized evidence of conduct tied to the Site — VIP-payment records, authored forum posts, or forensically-traced upload activity — not generic allegations of membership or presence.

B. The discovery sought is specific and limited. Plaintiff seeks, as to the two payment processors, records concerning the specific merchant accounts identified by account holder and statement descriptor — not any broader scope of financial discovery. Plaintiff seeks, as to Cloudflare, Inc. and Tucows, Inc., records limited to the single domain gay-torrents.org — including account holder identification, billing records, origin-server IP addresses, DNS

configuration records, and account communications — and to no other domain or customer in those providers' possession. Plaintiff seeks, as to each email-service provider, subscriber identifying information for only those email addresses Plaintiff has preserved for Member Defendants concentrated at that provider, keyed to the corresponding John Doe number in the Complaint. (Bleicher Decl. ¶¶ 30, 33–34.) Each proposed subpoena is attached as an exhibit to this Motion. The specific email addresses for which subscriber records will be sought from each provider are maintained in Plaintiff's possession and will be transmitted directly to each provider upon issuance of the subpoenas authorized by this Court. The Member Defendants' registered email addresses and IP addresses are not placed on the public docket: the public Exhibit D to the Complaint discloses only Doe number, Site username, and Site user identification number, and no email address, account identifier, or other personally identifying information of any Member Defendant will be placed on the public record as a result of the discovery Plaintiff seeks.

C. No alternative means exist. Gay-Torrents.org does not publicly expose subscriber identity. Its administrators have demonstrated hostility to lawful takedown and preservation demands for more than a decade. (Compl. ¶¶ 5, 52–54; Bleicher Decl. ¶¶ 21–23.) The payment-processor merchant records that document the flow of funds to Defendants BYZONA LTD and Nazarov can be obtained only from Skrill and PayPal. The domain-registration, billing, and origin-server records that would identify the operator of gay-torrents.org and its true upstream hosting infrastructure can be obtained only from Cloudflare (the Site's reverse-proxy and DNS provider) and Tucows (the registrar of record for the gay-torrents.org domain). The subscriber-level identifying information associated with the preserved email addresses can be obtained only from the email providers at which those addresses are hosted. Plaintiff has no alternative investigative path to that information.

D. The information is necessary to advance the claims. Plaintiff cannot prosecute this action against unidentified Member Defendants. Plaintiff cannot effect service of process on a person whose legal name and address it does not know. Plaintiff cannot pursue the equitable remedies sought in the Complaint — including unjust enrichment, accounting, and constructive trust — against the BYZONA LTD and Nazarov merchant accounts without the account and transaction records in Skrill's and PayPal's possession. Expedited discovery is thus not a matter of investigative convenience but of practical necessity to the claims Plaintiff has pled.

E. Subscriber privacy interests are protected by Plaintiff's proposed 30-day notification protocol. Plaintiff commits — and requests that this Court order — that each email-service provider served with a subpoena issued pursuant to this Order shall, before producing any responsive records, notify the affected subscriber of the subpoena, in writing, at the subpoenaed email address. The subscriber shall have thirty (30) days from the date of such notification within which to file a motion to quash. Only upon the expiration of that 30-day period, and only in the absence of a timely-filed motion to quash, shall the provider produce records. All records produced in response to the subpoenas authorized by this Order shall be filed only under seal and used solely for purposes of this litigation. The proposed protocol is modeled on the notification protocols approved in a range of Doe-defendant copyright cases in this District and is substantially more protective of subscriber privacy than the bare Rule 45 notice requirement.

## II. *Pacific Century Does Not Bar the Relief Requested.*

Plaintiff anticipates reliance on *Pacific Century International Ltd. v. Does 1-37*, 282 F.R.D. 189 (N.D. Ill. 2012), in which Chief Magistrate Judge Brown denied expedited discovery in a mass-joinder BitTorrent "swarm" case. *Pacific Century* does not control here.

In *Pacific Century*, the plaintiff's entire theory of joinder, liability, and identification rested on a single data point: the co-presence of thirty-seven unrelated internet protocol addresses in a

single BitTorrent swarm over a span of weeks. *Id.* at 191–93. The court held that co-presence in a swarm did not establish the "same transaction or occurrence" required for Rule 20 joinder; that an IP address did not identify an individual; and that the expedited-discovery request was serving, in practice, a rapid-settlement business model in which the plaintiff's interest was in extracting pre-identification settlements from ISP subscribers who wished to avoid disclosure. *Id.* at 194–97.

This action is different in every respect that mattered to the *Pacific Century* court. First, the factual basis for joinder is not swarm-IP co-presence; it is the individualized conduct of each Member Defendant in one or more of four preserved conduct categories, each independently actionable under the Copyright Act and each independently established in Plaintiff's possession before this action was filed. (Bleicher Decl. ¶¶ 28–29.) Second, the identification Plaintiff seeks is not from IP address alone; Plaintiff has preserved, for each Member Defendant, a specific registered email address associated with that Member Defendant's Site activity, and is seeking only to convert that preserved email address into the subscriber-level identity maintained by a specific email provider. Third, Plaintiff's rolling severance protocol — set forth in Section III below and tied to the subpoena recipients' actual production timelines, with an eighteen-month outer backstop — replaces the open-ended-Doe-docket structure that drove the *Pacific Century* court's analysis. Fourth, and dispositively, Plaintiff has committed in the Verified Complaint (¶ 26) and in Section III below to dismiss without prejudice any identified Member Defendant lacking an independent jurisdictional connection to this District, so that Plaintiff may refile in the Member Defendant's home district. The "one bite at the apple" settlement-extraction posture that drove the *Pacific Century* court's analysis — keeping every Doe in a single distant forum to maximize pre-identification settlement leverage — is structurally absent here. The Court is not being asked to host the merits prosecution of all 325 Member Defendants. It is being asked only

to host the identification stage, after which the Member Defendants will be sorted to their respective proper forums.

### III. Plaintiff's Severance Commitment Protects Docket Economy.

Plaintiff respectfully commits, and requests that this Court order, the following severance protocol, designed to impose meaningful docket discipline while reflecting the practical reality of third-party subpoena compliance timelines.

First, as to identification: the clock for proceeding against any given John Doe Member Defendant runs from the date on which a subpoena recipient produces information sufficient to identify that Member Defendant, not from the date of entry of this Order. Plaintiff's experience, and the experience of copyright plaintiffs generally in this District, is that email-service-provider subpoena responses typically require three to six months from issuance after the 30-day subscriber-notification period built into the subpoenas, and that internet service provider and other follow-on subpoena responses add further elapsed time. Tying the severance clock to the date of entry of the Order, rather than to the date of productive response, would operate to sever Member Defendants before Plaintiff has received the information necessary to identify or serve them — punishing Plaintiff for third-party compliance timelines outside Plaintiff's control, and defeating the very purpose for which expedited discovery is being authorized.

Second, as to unproductive subpoena responses: where a first-round subpoena returns information insufficient to identify the Member Defendant — because the account is closed, the registration information is false, or subscriber-level records do not exist — Plaintiff may issue one follow-on Rule 45 subpoena per Member Defendant, without further leave of this Court, to an institutional recipient identified through the initial response (such as the internet service provider corresponding to a IP address, or the payment processor corresponding to a VIP-transaction

record). Plaintiff's investigation of any given Member Defendant is structurally limited to two subpoena rounds absent further leave of this Court on good cause shown.

Third, as to the outer backstop: regardless of the status of investigation, any Member Defendant whose legal identity has not been obtained within eighteen (18) months after the entry of this Order shall be severed and dismissed without prejudice. Eighteen months reflects Plaintiff's realistic assessment that sequential subpoenas to email providers, and where necessary to internet service providers identified through those responses, require twelve to fifteen months of elapsed time, plus the 90-day post-production window committed below, while still imposing a finite endpoint on this action's Doe-defendant docket. The backstop may be extended, upon Plaintiff's motion and a showing of good cause, where a subpoena recipient's substantial non-responsiveness materially delayed identification.

Fourth, as to service of process after identification: as to any Member Defendant whose legal identity has been obtained but upon whom effective service of process has not been made within ninety (90) days of such identification, that Member Defendant shall likewise be severed and dismissed without prejudice. This prong is unchanged from the standard 90-day service window under Federal Rule of Civil Procedure 4(m).

Fifth, as to transparency: Plaintiff shall file, not later than one hundred eighty (180) days after the entry of this Order and every one hundred eighty (180) days thereafter, a status report setting forth — as to the Member Defendants collectively, without identifying information — the number of Member Defendants identified, the number served, the number for whom subpoenas are outstanding and the issue dates thereof, the number for whom investigation has been exhausted, and the number severed. This reporting requirement addresses the docket-visibility concern that

has animated judicial skepticism of Doe-defendant practice while protecting the privacy of Member Defendants whose identification has not yet ripened into service of process.

Sixth, as to post-identification jurisdictional sorting: as to each Member Defendant whose subscriber-level identifying information has been obtained, Plaintiff will file within ninety (90) days of such receipt one of the three filings specified in Paragraph 26 of the Verified Complaint — (i) a statement of intent to proceed (Illinois-connected defendants), (ii) a Rule 21 severance motion with dismissal without prejudice to refiling in the Member Defendant's home district (out-of-district domestic defendants), or (iii) a Rule 41(a) voluntary dismissal (foreign or non-productive). The merits prosecution of any out-of-district domestic Member Defendant will occur in that defendant's home district, not in this one. This prong is the post-identification analog of the 4(m) service window addressed in the Fourth prong above: where the Fourth prong terminates the action as to any Member Defendant who is identified but not timely served, the Sixth prong terminates this District's role as the merits forum as to any Member Defendant who is identified but jurisdictionally misplaced.

Taken together, the foregoing components protect subscriber privacy, impose a finite endpoint on the Doe-defendant docket, tie the severance clock to circumstances within Plaintiff's reasonable control, and prevent the open-ended accumulation of unidentified defendants that has properly generated judicial concern in other cases.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to serve the Rule 45 subpoenas attached hereto, subject to the 30-day subscriber-notification protocol and the severance protocol set forth above, and enter the [Proposed] Order submitted herewith.

Dated: April 28, 2026

Respectfully submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
FlavaWorks Entertainment, Inc.
2705 West Fulton Street
Chicago, IL 60612
Telephone: 305-438-9450
Email: Corinthia@flavaworks.com

Counsel for Plaintiff
FlavaWorks Entertainment, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing to be filed electronically using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, and that a copy will be served on all non-CM/ECF parties by the method set forth in the accompanying proof of service.

/s/ Corinthia Hicks
Corinthia Hicks, Esq.