## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., <br>     Plaintiff, | ) <br> ) <br> ) | Case No. 1:26-cv-04857 |
| v. | ) <br> ) <br> ) | JURY TRIAL DEMANDED |
| Ludovic Deniau, | ) <br> ) <br> ) | Hon. John Robert Blakey |
| John Doe #1 ("TheMan"), <br> Owner of Gay-Torrents.org, | ) <br> ) <br> ) | |
| John Does #2 through #8, <br> Administrators of Gay-Torrents.org <br> (sgmusuk, jasepl, Marius, ams_guy, <br> lucasneo, simlacroix, matthewmancs), | ) <br> ) <br> ) <br> ) <br> ) | |
| BYZONA LTD, <br> a Bulgarian company, | ) <br> ) <br> ) | |
| Orlin Tsekov, an individual, | ) <br> ) | |
| Evgenii Nazarov, an individual, | ) <br> ) | |
| John Does #9 through #47, <br> identified by Gay-Torrents.org usernames <br> (see Exhibit D), | ) <br> ) <br> ) <br> ) | |
|     Defendants. | ) | |

---

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiff FlavaWorks Entertainment, Inc. ("Plaintiff" or "FlavaWorks"), by and through its undersigned attorney, files this First Amended Verified Complaint pursuant to the Court's Minute Entry of May 4, 2026 [Dkt. 7], which granted Plaintiff leave to amend by May 26, 2026. This First Amended Complaint supersedes the original Complaint [Dkt. 1] and addresses the joinder and personal-jurisdiction matters identified in the Court's Order. The complaint is verified by the accompanying Verification of Phillip Bleicher bound hereto, and states as follows:

**NATURE OF THE ACTION**

1. This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., for unjust enrichment, and for fraudulent concealment. Plaintiff brings this action to stop Defendants from infringing, promoting, encouraging, enabling, and facilitating the infringement of copyrights owned by Phillip Bleicher and exclusively licensed to Plaintiff (collectively, "Plaintiff's Intellectual Property") on the Internet, and to hold accountable the individuals and entities who have for years received and concealed the proceeds of that infringement. Defendants are joined in this action pursuant to Federal Rule of Civil Procedure 20(a)(2) because Plaintiff's claims against each Defendant arise out of the same series of transactions or occurrences—the operation, financing, and enforcement-evasion of Gay-Torrents.org as a coordinated piracy enterprise targeting Plaintiff's copyrighted works—and present common questions of law and fact, as set forth in Paragraph 24 below. Each Defendant is subject to the personal jurisdiction of this Court on the per-defendant bases set forth in Paragraphs 25 through 37 below.

2. Gay-Torrents.org ("the Site") is a private, invite-only BitTorrent tracker that has operated since at least 2009, facilitating the mass unauthorized distribution of copyrighted adult entertainment content, including works owned by Plaintiff's principal. The Site has approximately 20,671 currently active members and, since its launch in 2009, has registered more than 146,000 members. The Site is operated by Defendant John Doe #1, known on the Site as "TheMan," with the active participation of seven (7) administrators.

3. Defendant Ludovic Deniau joined paid membership websites operated under the FlavaWorks brand, agreed to terms of service prohibiting redistribution, downloaded dozens of copyrighted videos, and made those videos available for unauthorized distribution on Gay-Torrents.org and related piracy platforms. Plaintiff identified Defendant Deniau through forensic identifiers embedded in downloaded video files at the time of download, through analysis of subscription records and payment data matching across multiple FlavaWorks properties, and through internet service provider hostname data geolocating Defendant Deniau to Lille, France.

4. Defendants BYZONA LTD, Orlin Tsekov (BYZONA's named Executive Manager), and Evgenii Nazarov are the corporate and individual recipients of the revenue generated by the Site's unlawful distribution of Plaintiff's copyrighted works. Through a deliberately opaque

Page 2

payment-processing scheme routing transactions through fictitious "hosting" fronts (247host.eu and cloud2max.club), Defendants have for years received payments from Site members in a manner designed to conceal both the nature of the transactions and the identities of their true beneficiaries. Upon information and belief, Defendant John Doe #1 (TheMan), Defendant BYZONA LTD and its named manager Orlin Tsekov, and Defendant Evgenii Nazarov either (a) are the same natural person operating under multiple identities, or (b) are distinct individuals acting in concert as principals and nominees in a common enterprise to operate Gay-Torrents.org and to receive and conceal the proceeds thereof. The rapid substitution of successor merchant accounts when predecessors were terminated by regulated payment processors, the uninterrupted continuity of payment flow through replacement shells, and the shared functional use of the site-official email address info@gay-torrents.org all support the inference of common control.

5. Despite receiving dozens of formal DMCA takedown notices between 2012 and 2025, the operator of Gay-Torrents.org has refused to remove the copyrighted content. Cross-referencing of formal notices sent in February 2024 and October 2025 reveals that forty-seven (47) of fifty-six (56) infringing links reported in February 2024 remained active on the Site twenty months later. Infringing content previously reported by Plaintiff remains accessible on the Site as of the date of this filing.

6. Rather than comply with lawful takedown demands, the Site's owner, Defendant TheMan, publicly characterized Plaintiff's copyright enforcement as "straight-up extortion," encouraged users to ignore cease and desist demands, and falsely claimed that the copyrighted content had been removed from the Site. Site administrators publicly endorsed these positions, and users of the Site engaged in a coordinated online campaign to discourage compliance, coach evasion of detection, attack Plaintiff personally, and conceal their identities through account deletion.

## THE PARTIES

7. Plaintiff FlavaWorks Entertainment, Inc. is a corporation organized under the laws of the State of Illinois with its principal place of business at 2705 West Fulton Street, Chicago, Illinois 60612. Plaintiff is the exclusive licensee of all copyrights at issue in this action, pursuant to an Exclusive Copyright License and Enforcement Agreement dated March 1, 2024, between Phillip Bleicher, as Owner, and Plaintiff, as Licensee (the "License Agreement"). The License

Agreement grants Plaintiff the exclusive rights under 17 U.S.C. § 106 in each of the works at issue, assigns to Plaintiff all accrued claims for infringement thereof (whether arising before or after the effective date of the License Agreement), and confers upon Plaintiff both legal and beneficial ownership of the licensed rights within the meaning of 17 U.S.C. § 501(b). Plaintiff therefore has standing to pursue the claims asserted herein.

8. Phillip Bleicher is the sole and exclusive owner of legal title to all copyrights at issue in this action. Mr. Bleicher acquired the copyrights at issue on July 13, 2022, pursuant to a Copyright Transfer Agreement between Flava Works, Inc. (an Illinois corporation and Mr. Bleicher's predecessor in the production and distribution of the works at issue) and Mr. Bleicher, under which Flava Works, Inc. irrevocably assigned all rights, title, and interest in the copyrights listed in Addendum A thereto to Mr. Bleicher. The Copyright Transfer Agreement was recorded with the United States Copyright Office on February 14, 2025, at Volume 15032, Document 534. A true and correct copy of the Certificate of Recordation issued by the United States Copyright Office is attached hereto as Exhibit A. Mr. Bleicher has exclusively licensed those copyrights to Plaintiff, and has assigned to Plaintiff all accrued claims for infringement thereof, pursuant to the License Agreement described in Paragraph 7. Mr. Bleicher is also the sole shareholder and Chief Executive Officer of FlavaWorks Entertainment, Inc.

9. Defendant Ludovic Deniau ("Deniau") is an individual believed to reside in the Greater Lille Metropolitan Area, France. Plaintiff's last known email address for Deniau is ludovic.deniau@wanadoo.fr.

10. Defendant John Doe #1, known as "TheMan," is the owner and operator of Gay-Torrents.org. TheMan registered as user #4 on the Site on June 4, 2009, the date the Site was launched, and remains actively engaged in the operation of the Site. His registered email address is info@gay-torrents.org—the Site's official contact address. Upon information and belief, TheMan operates the Site through or in connection with Defendant BYZONA LTD. TheMan's true name and identity are unknown to Plaintiff and can only be ascertained through discovery.

11. Defendants John Does #2 through #8 are individuals who, at all times relevant to this Complaint, held the user class designation "administrator" on Gay-Torrents.org and were actively engaged in the administration, moderation, and promotion of the Site. Each such Defendant had and exercised the authority to remove infringing torrent listings, to ban

infringing users, to issue warnings, to recruit new members through the Site's invite system, and to adopt or reject content-review decisions. Each such Defendant's true identity is unknown to Plaintiff and can only be ascertained through discovery.

12. Defendant John Doe #2, known as "sgmusuk" (user ID 18132), is a resident of the United Kingdom and an administrator of Gay-Torrents.org. Defendant sgmusuk joined Gay-Torrents.org in April 2010 and has, as publicly displayed on the Site, generated over three hundred (300) terabytes of combined upload and download traffic on the Site.

13. Defendant John Doe #3, known as "jasepl" (user ID 47996), is a resident of the Republic of the Maldives and an administrator of Gay-Torrents.org. Defendant jasepl joined the Site in February 2011 and has, as publicly displayed on the Site, generated over nine (9) terabytes of combined upload and download traffic on the Site.

14. Defendant John Doe #4, known as "Marius" (user ID 83127), is a resident of the Republic of the Philippines and an administrator of Gay-Torrents.org. Defendant Marius joined the Site in March 2012 and has, as publicly displayed on the Site, generated over one hundred fifteen (115) terabytes of combined upload and download traffic on the Site.

15. Defendant John Doe #5, known as "ams_guy" (user ID 83193), is a resident of the Kingdom of the Netherlands and an administrator of Gay-Torrents.org. Defendant ams_guy joined the Site in March 2012 and has, as publicly displayed on the Site, generated over thirty-five (35) terabytes of combined upload and download traffic on the Site.

16. Defendant John Doe #6, known as "lucasneo" (user ID 83550), is a resident of the Federative Republic of Brazil and an administrator of Gay-Torrents.org. Defendant lucasneo joined the Site in April 2012 and has, as publicly displayed on the Site, generated over three (3) terabytes of combined upload and download traffic on the Site.

17. Defendant John Doe #7, known as "simlacroix" (user ID 110493), is a resident of the Kingdom of the Netherlands and an administrator of Gay-Torrents.org. Defendant simlacroix joined the Site in March 2013 and has, as publicly displayed on the Site, generated over seven (7) terabytes of combined upload and download traffic on the Site.

18. Defendant John Doe #8, known as "matthewmancs" (user ID 142315), is a resident of the United Kingdom and an administrator of Gay-Torrents.org. Defendant matthewmancs joined

the Site in June 2014 and has, as publicly displayed on the Site, generated over four hundred seventy (470) terabytes of combined upload and download traffic on the Site—the largest volume of any user of the Site.

19. Defendant BYZONA LTD ("BYZONA") is a company organized under the laws of the Republic of Bulgaria, Registration Number EIK 201097680, with its registered office at 29 Gen. Gurko Str., entry A, app. 5, 6100 Kazanlak, Bulgaria. BYZONA is managed by Orlin Tsekov, Executive Manager. BYZONA operates 247host.eu, the purported web-hosting website through which Gay-Torrents.org VIP-membership payments are routed to Skrill and ultimately received by BYZONA.

20. Defendant Orlin Tsekov ("Tsekov") is an individual who, according to BYZONA's public corporate filings on the Bulgarian commercial register, is BYZONA's Executive Manager (Управител). In that capacity, Tsekov is the natural person with authority over BYZONA's merchant relationships with Skrill USA, Inc. and other regulated payment processors, over the opening and operation of merchant accounts under successor shell identities following prior account terminations, and over the receipt and disbursement of the proceeds of Gay-Torrents.org's infringing operations. Tsekov is named in his individual capacity for the affirmative acts of contributory and vicarious copyright infringement, inducement, unjust enrichment, and fraudulent concealment alleged in Counts I through VI below.

21. Defendant Evgenii Nazarov ("Nazarov") is an individual whose residence is, upon information and belief, outside the United States. Nazarov is the named individual payee on the PayPal merchant account associated with cloud2max.club, which the Site uses as a second front-facing entity to receive payments from Site members. Nazarov's true residence and other identifying information are unknown to Plaintiff and can only be ascertained through discovery.

22. Defendants John Does #9 through #47 (the "Member Defendants") are thirty-nine (39) individuals whose true names are unknown to Plaintiff but whose registered email addresses, Gay-Torrents.org usernames, and user identification numbers are known to Plaintiff. Each Member Defendant's Gay-Torrents.org username and user identification number are set forth in Exhibit D hereto. Each Member Defendant is, upon information and belief based on registration data, payment records, IP geolocation, email top-level domain, and/or regional email-provider analysis, a resident of the United States. Each Member Defendant has, in

addition to his Gay-Torrents.org account, created an account on one or more FlavaWorks-brand websites using the same registered email address, and in doing so affirmatively accepted the FlavaWorks Terms and Conditions then in effect, which Terms and Conditions contained the forum-selection and consent-to-jurisdiction clause set forth in Paragraph 36 below. Plaintiff has narrowed the Member Defendants in this First Amended Complaint to this cohort of thirty-nine (39) individuals; Plaintiff respectfully reserves the right to seek leave under Federal Rule of Civil Procedure 15 to add additional Member Defendants as their FlavaWorks-side records are confirmed through Plaintiff's ongoing investigation and through subpoenas issued under 17 U.S.C. § 512(h) or otherwise authorized in this action.

23. Upon information and belief, all Defendants are members, operators, administrators, or financial beneficiaries of Gay-Torrents.org.

## JURISDICTION AND VENUE

24. Joinder Under Federal Rule of Civil Procedure 20(a)(2). Defendants are properly joined in this single action under Federal Rule of Civil Procedure 20(a)(2) because Plaintiff's claims against each Defendant arise out of the same series of transactions or occurrences and because questions of law and fact common to all Defendants will arise in this action. The common transaction or occurrence is the coordinated operation, financing, and enforcement-evasion of Gay-Torrents.org as a single platform targeting Plaintiff's copyrighted works. Each Member Defendant accepted the same family of FlavaWorks Terms and Conditions through clickwrap and is alleged to have breached the same redistribution covenants; each Member Defendant used the same Gay-Torrents.org infrastructure operated by the same operator-tier Defendants; each operator-tier Defendant participated in the same paired payment-concealment channels (BYZONA/Skrill and Nazarov/PayPal) that financed the same Site; and each Defendant acted within the same continuous 2012–2026 enforcement period. Common questions of law and fact include, without limitation: the validity and enforceability of the FlavaWorks Terms and Conditions and its Cook County forum-selection clause; the ownership and registration of the copyrights at issue; the operation of the Gay-Torrents.org infrastructure; the operation of the paired payment-concealment channels; the application of contributory, vicarious, and inducement doctrines to the operator-tier Defendants; the application of Federal Rule of Civil Procedure 4(k)(2) to the foreign operator-tier Defendants; the willfulness of Defendants'

infringement; and the propriety of injunctive relief. To the extent the Court finds joinder improper as to any individual Member Defendant, Plaintiff respectfully requests that the Court sever that Member Defendant under Federal Rule of Civil Procedure 21 and retain jurisdiction rather than dismiss.

25. Subject-Matter Jurisdiction. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and pursuant to the Copyright Act, 17 U.S.C. § 101 et seq. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

26. Personal Jurisdiction — Per-Defendant Allegations. The Court has personal jurisdiction over each Defendant on the specific bases set forth in Paragraphs 27 through 37 below, pleaded defendant-by-defendant. The FlavaWorks forum-selection and consent-to-jurisdiction clause referenced in those paragraphs is set forth in Paragraph 36 below.

27. Personal Jurisdiction Over Defendant Deniau. The Court has personal jurisdiction over Defendant Deniau because Deniau expressly consented to personal jurisdiction in Cook County, Illinois when he agreed to the Terms and Conditions of the paid-membership FlavaWorks websites at the time of his October 2004 ThugBoy.com subscription (CCBill Subscription ID 1061961394) and February 2013 MixItUpBoy.com subscription (CCBill Subscription ID 0513054601000004183), both of which Terms and Conditions provided that "you hereby consent to the personal jurisdiction and venue of the courts located in Cook County, Illinois." In the alternative, Deniau is subject to personal jurisdiction in Illinois under 735 ILCS 5/2-209 because of his purposeful direction of tortious conduct (the unauthorized redistribution of Plaintiff's copyrighted works) at Plaintiff and at Plaintiff's Illinois place of business.

28. Personal Jurisdiction Over Defendant John Doe #1 (TheMan). The Court has personal jurisdiction over Defendant TheMan pursuant to Federal Rule of Civil Procedure 4(k)(2), because Plaintiff's claims against TheMan arise under federal law, TheMan is (upon information and belief) not subject to general personal jurisdiction in any one state, and the exercise of jurisdiction is consistent with the Fifth Amendment's due process requirements in light of TheMan's knowing and continuous targeting of the United States market through

operating Gay-Torrents.org, deriving revenue from United States residents over more than sixteen years, using United States-based registrar (Tucows, Inc.) and CDN (Cloudflare, Inc.) services, and infringing copyrights registered with the United States Copyright Office. In the alternative, TheMan is subject to personal jurisdiction in Illinois under 735 ILCS 5/2-209 because of his purposeful direction of tortious conduct at Plaintiff and at Plaintiff's Illinois place of business, including his December 4, 2025 forum post publicly characterizing Plaintiff's Illinois-based enforcement as "straight-up extortion."

29. Personal Jurisdiction Over Defendants John Does #2 through #8 (Administrators). The Court has personal jurisdiction over each of the seven (7) administrator Defendants (sgmusuk, jasepl, Marius, ams_guy, lucasneo, simlacroix, and matthewmancs) pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims against each administrator arise under federal law. Each administrator is, based on publicly displayed Site profile data, a foreign resident not subject to general personal jurisdiction in any one state (specifically: United Kingdom (sgmusuk, matthewmancs), Maldives (jasepl), Philippines (Marius), Netherlands (ams_guy, simlacroix), and Brazil (lucasneo)). The exercise of jurisdiction over each administrator is consistent with the Fifth Amendment's due process requirements because each has knowingly exercised administrator-level operational control over a service that infringes United States copyrights and has derived revenue from United States residents, and because (a) Defendant matthewmancs personally posted on the Site forum on December 27, 2025 endorsing Defendant TheMan's December 2025 "straight-up extortion" post directed at Plaintiff's Illinois-based enforcement; (b) Defendant Marius personally edited the Site's "Banned Content" announcement on or about January 21, 2026 to add "Flava Works and its affiliates," specifically targeting Plaintiff; and (c) Defendant sgmusuk personally posted on the Site forum on March 18, 2026 the false statement that Plaintiff's content had been deleted from the Site, continuing the operator-tier campaign to defeat Plaintiff's Illinois-based enforcement.

30. Personal Jurisdiction Over Defendant BYZONA LTD. The Court has personal jurisdiction over BYZONA pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims against BYZONA arise under federal law. BYZONA is a Bulgarian corporation not subject to general personal jurisdiction in any one state. The exercise of jurisdiction over BYZONA is consistent with the Fifth Amendment's due process requirements in light of BYZONA's knowing and continuous targeting of the United States market through (a) operating a Skrill USA, Inc.

merchant account (Skrill USA, Inc. being a licensed United States money-service business) through which payments from United States residents have been collected; (b) operating the 247host.eu front for receipt of payments from United States residents accessing Gay-Torrents.org; and (c) participating, as the financial beneficiary, in the operation of a service that infringes copyrights registered with the United States Copyright Office and owned by an Illinois resident. In the alternative, BYZONA is subject to personal jurisdiction in Illinois under 735 ILCS 5/2-209.

31. Personal Jurisdiction Over Defendant Tsekov. The Court has personal jurisdiction over Defendant Tsekov pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims against Tsekov arise under federal law. Tsekov is (upon information and belief) not subject to general personal jurisdiction in any one state. The exercise of jurisdiction over Tsekov is consistent with the Fifth Amendment's due process requirements because, as BYZONA's Executive Manager and the natural person with operational control over BYZONA's merchant relationships with Skrill USA, Inc., Tsekov has knowingly directed the affirmative acts of contributory copyright infringement, inducement, and fraudulent concealment alleged herein at Plaintiff and at the United States market. The fiduciary-shield doctrine does not bar the exercise of jurisdiction over Tsekov because the conduct giving rise to liability is Tsekov's own personal participation in the alleged scheme.

32. Personal Jurisdiction Over Defendant Nazarov. The Court has personal jurisdiction over Defendant Nazarov pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims against Nazarov arise under federal law. Nazarov is (upon information and belief) a foreign individual not subject to general personal jurisdiction in any one state. The exercise of jurisdiction over Nazarov is consistent with the Fifth Amendment's due process requirements in light of Nazarov's knowing and continuous targeting of the United States market through (a) maintaining a PayPal, Inc. merchant account (PayPal, Inc. being a regulated United States payment processor headquartered in San Jose, California) through which payments from United States residents have been collected, including the April 1, 2026 test purchase documented in Exhibit H; and (b) participating, as the financial beneficiary, in the operation of a service that infringes copyrights registered with the United States Copyright Office and owned by an Illinois resident.

33. Personal Jurisdiction Over Defendants John Does #9 through #47 (Member Defendants). The Court has personal jurisdiction over each of the thirty-nine (39) Member Defendants by his express contractual consent. Each Member Defendant created an account on one or more FlavaWorks-brand websites using the same email address used to register his Gay-Torrents.org account (identified by username and user identification number in Exhibit D), and in doing so affirmatively clicked through and accepted the FlavaWorks Terms and Conditions then in effect, which Terms and Conditions contained the forum-selection and consent-to-jurisdiction clause set forth in Paragraph 36 below.

34. Clickwrap Mechanism. The FlavaWorks Terms and Conditions in effect during the relevant period required affirmative click-through acceptance as a condition of account creation. The historical version in effect during the substantial majority of the Member Defendants' account-creation events (Exhibit C Part 2) provides, at Section 4.2: "In order to register and subscribe for a paid membership to one of the Sites, you must indicate agreement with the terms and conditions of this Agreement by checking the 'I have read and agree to the membership Terms and Conditions' checkbox on the registration page. You will not be allowed to subscribe to the Sites before clicking that checkbox." Section 4.2 applies equally to free trial memberships (the "Trial Membership" button) and paid subscriptions (the "Click Here to Join" button). Each Member Defendant's account was therefore created only upon his affirmative, conspicuous, click-through acceptance of the Terms and Conditions then in effect, satisfying the standard for enforceability of online agreements set forth in Sgouros v. TransUnion Corp., 817 F.3d 1029 (7th Cir. 2016).

35. Identity Attribution. The express contractual consent of each Member Defendant is properly attributed to that Member Defendant because the registered email address on Gay-Torrents.org for each Member Defendant is an exact match for the email address used to create the corresponding FlavaWorks-brand account, as established by Plaintiff's internal records. The identity of the email address establishes the identity of the natural person; for a substantial subset of the Member Defendants, this identification is further corroborated by the use of the identical unique username on both platforms.

36. The FlavaWorks Forum-Selection and Consent-to-Jurisdiction Clause. At all times relevant to this Complaint, the FlavaWorks Terms and Conditions applicable to every FlavaWorks-brand

website have contained an express forum-selection and consent-to-jurisdiction clause selecting the courts of Cook County, Illinois. The current version (Exhibit C Part 1, Section 11) provides: "You and FlavaWorks Entertainment, Inc. agree that any dispute, claim, or controversy arising out of or relating to this Agreement, the Sites, or your use of the Services — whether sounding in contract, tort, statute, or otherwise — shall be brought exclusively in the United States District Court for the Northern District of Illinois, Eastern Division, or, only if that court lacks subject-matter jurisdiction, in the state courts of Cook County, Illinois. You expressly consent to the personal jurisdiction of those courts and waive any objection to venue." The historical version (Exhibit C Part 2, Section 11.1) similarly provided: "You agree that any action to enforce this Agreement shall be brought in the federal or state courts located in Chicago, Illinois ... and you hereby consent to the personal jurisdiction and venue of the courts located in Cook County, Illinois."

37. Venue is proper in this district under 28 U.S.C. § 1391(b) because Plaintiff's principal place of business is located in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant Deniau and each of the Member Defendants expressly consented to venue in this district through the FlavaWorks forum-selection clause set forth in Paragraph 36.

## FACTS

### A. Plaintiff's Copyrighted Works and Enforcement Authority

38. Phillip Bleicher is the owner of copyrights in hundreds of adult entertainment videos, photographs, and related works distributed through a network of paid subscription websites operating under the FlavaWorks brand, including but not limited to: ThugBoy.com, CocoDorm.com, PapiCock.com, MixItUpBoy.com, RawRods.com, RawRio.com, FlavaFlix.com, and CocoStore.com.

39. Mr. Bleicher has obtained copyright registrations from the United States Copyright Office for the copyrighted works at issue in this action. The works at issue are identified by title and copyright registration number in Exhibit B. Each registration identified in Exhibit B was issued by the United States Copyright Office prior to the commencement of Defendants' infringement of the registered work.

40. Through the License Agreement described in Paragraph 7, Mr. Bleicher granted FlavaWorks Entertainment, Inc. exclusive rights under 17 U.S.C. § 106 in the works at issue and assigned to Plaintiff all accrued claims for infringement thereof. Plaintiff brings this action pursuant to that authority as exclusive licensee under 17 U.S.C. § 501(b).

41. Access to the copyrighted works requires a paid membership on the applicable FlavaWorks website. Members must agree to Terms and Conditions that expressly prohibit copying, downloading for redistribution, sharing, or otherwise distributing the copyrighted content. Copies of the applicable Terms and Conditions are attached as Exhibit C.

42. Plaintiff employs a proprietary forensic watermarking system through which, at the moment a FlavaWorks member initiates a download of a copyrighted video file from Plaintiff's member area, the file-delivery infrastructure generates a unique, thirty-two-character hexadecimal identifier and writes that identifier into the MPEG-4 copyright metadata field of the delivered file. The identifier is maintained in Plaintiff's internal database alongside the member account, download timestamp, source-file information, and delivery IP address, and uniquely ties the resulting copy of the file to the specific member and download session. The identifier is not reversible; it functions as a lookup key into Plaintiff's internal database.

### B. Gay-Torrents.org and Its Operations

43. Gay-Torrents.org is a private, invite-only BitTorrent tracker that describes itself as "Your Private BitTorrent GAY Community." The Site has been in continuous operation since at least June 2009 and, as of the date of this filing, has approximately 20,671 currently active members and, since its launch, has registered more than 146,000 members.

44. The Site facilitates the unauthorized distribution of copyrighted content by providing torrent listings, a tracker that connects peers for file sharing, search functionality, forums, and community infrastructure. While the Site does not host the actual video files on its servers, it provides the essential platform and coordination mechanism that enables users to share files peer-to-peer using the BitTorrent protocol. Images on the Site are hotlinked from third-party hosting services.

45. Gay-Torrents.org generates revenue through a paid VIP membership system. Users can purchase VIP memberships ranging from €14.95 (30 days) to €199.95 (3 years). VIP benefits

include upload credits (1 EUR = 2 GB of upload capacity), immunity from auto-disable for low sharing ratios, immunity from automated warnings, unlimited download slots, and invitations to recruit new users—thereby explicitly incentivizing the uploading of additional infringing content.

46. The Site maintains a DMCA page at gay-torrents.org/dmca.php that claims to have "adopted an efficient notice and takedown procedure" and directs copyright owners to email info@gay-torrents.org. Despite this public representation, the Site has failed to comply with any of the dozens of DMCA notices sent by Plaintiff and by its predecessor copyright holder over a period spanning more than a decade. A copy of the Site's DMCA page, together with other representative Site documentation (including the Site's donation pages, donation FAQ, staff roster, and the "Banned Content" announcement described in Paragraph 75 below), is attached as Exhibit F.

47. Gay-Torrents.org is operated by Defendant TheMan as Owner and by seven (7) administrators (Defendants John Does #2 through #8).

### C. The Payment-Concealment Scheme

48. The payments that sustain Gay-Torrents.org's infringing operations are routed through a deliberately opaque payment-processing scheme designed to conceal the true nature of the transactions from users' financial institutions, from regulated payment processors' compliance staff, and from copyright owners seeking to identify and disrupt the flow of infringement proceeds. The Site expressly advertises this concealment feature to users, stating on its VIP membership page: "On Your bank account/credit card statement You WON'T see anything related to Gay/Adult/Torrents site, so don't worry about this."

49. Plaintiff identified and documented two currently active payment channels through which Defendants receive the proceeds of infringement. Each channel is disguised as a legitimate web-hosting transaction.

50. Channel 1 (Skrill / BYZONA LTD). Gay-Torrents.org directs users to 247host.eu, a purported web-hosting site operated by Defendant BYZONA LTD. From 247host.eu, users are redirected to Skrill (pay.skrill.com), a regulated digital-wallet service operated by Skrill USA, Inc. (a

licensed U.S. money-service business). Payments processed through Channel 1 are remitted to a Skrill merchant account held by or for the benefit of Defendant BYZONA LTD.

51. On April 1, 2026, Plaintiff conducted a test purchase through Channel 1, paying €34.95 EUR and receiving in return a 90-day VIP membership on Gay-Torrents.org. The Skrill transaction was labeled "VPS Plan — Invoice #72531," bore Transaction ID 6940568549 and session ID sid=6097ef3a97becb9a96cb4c325cdafac7, and upgraded Plaintiff's investigator's account on Gay-Torrents.org to VIP status within minutes of payment. No actual web-hosting services were provided or made available. The Channel 1 payment flow, together with contemporaneous Skrill receipt and corresponding Chase Bank statement records, is documented in Exhibit H.

52. Channel 2 (PayPal / Evgenii Nazarov). Gay-Torrents.org also directs users to cloud2max.club, a second purported web-hosting site. Payments through Channel 2 are processed through PayPal, Inc. (San Jose, California) to a merchant account in the name of Defendant Evgenii Nazarov, with the merchant statement descriptor identifying "CLOUD2MAX"—not Gay-Torrents.org.

53. On April 1, 2026, Plaintiff conducted a parallel test purchase through Channel 2, paying €14.95 EUR (approximately $18.01 USD) and receiving in return a 30-day VIP membership. The PayPal transaction carried Transaction ID 6AK63036LE341043R, Merchant Transaction ID 6P798692U1199025A, and Invoice ID 72532—sequentially numbered with the Skrill invoice issued the same day. Again, no actual web-hosting services were provided or made available. The Channel 2 payment flow, together with contemporaneous PayPal receipt and corresponding Chase Bank statement records, is documented in Exhibit H.

54. The two Channels share a common and revealing pattern. Each Channel is dressed in the trade garb of a web-hosting company; each uses a different shell entity as the named merchant of record; and each is designed to ensure that no record of the transaction—on a bank statement, in a PayPal notification, or in a Skrill receipt—identifies Gay-Torrents.org, the Site's actual operators, or the true nature of the service being purchased.

55. This concealment structure is not incidental. It has evolved over years in direct response to prior enforcement. In September 2017, after complaints to PayPal concerning PayPal accounts info@cloud2max.eu and nadatanasov@comic.com, PayPal terminated those accounts. A 2017

DMCA notice by the copyright holder to Skrill concerning payments routed to Gay-Torrents.org likewise went unanswered. Rather than cease the unlawful use of those processors, Defendants responded by opening new PayPal and Skrill merchant accounts under successor shell entities (including cloud2max.club and the Nazarov-named PayPal account), and by expanding the number of front-facing "hosting" sites through which traffic is routed.

### D. The Commercial Scale of the Site's Operations

56. Gay-Torrents.org is not a hobby or noncommercial community. It is a paid, commercially operated enterprise. Since its launch in June 2009, the Site has registered more than 146,000 members, and as of the date of this filing has 20,671 currently active members.

57. The Site derives revenue from its members through a paid VIP-membership program—the mechanics and pricing of which are alleged in Paragraph 47 above—and through additional paid-access mechanisms available to users who have not been invited to the Site by an existing member. The Site itself describes this payment system in expressly commercial and automated terms, stating on its donation page: "Donation system is fully automatic. You will receive your VIP features immediately after payment."

58. On information and belief, Defendants' revenue from the Site's operations exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009. This figure is the product of Plaintiff's investigation and analysis of the Site's published pricing, its publicly visible donation records, and its registered member data, and is conservative in that it excludes cryptocurrency donations, advertising revenue, bonus-point sales, and pricing variations predating 2020, each of which would increase the true total.

59. Plaintiff's investigation has further identified, through publicly available data on the Site and through Plaintiff's own investigative analysis, in excess of 15,000 documented paid VIP-donation events made by more than 4,000 individual paying donors. Each such donation event is dated and is tied to the donor's specific member account on the Site, and each corresponds to one of the Site's VIP plans ranging from its current 30-day minimum (€14.95) to its multi-year tiers (up to €199.95).

60. The scale, continuity, and commercial character of these revenues demonstrate that Defendants' operation of the Site is a for-profit business—not a hobbyist community—that

depends on, and has for more than sixteen years been sustained by, the uploading, reproduction, and distribution of copyrighted works by its paying and invited members.

### E. History of DMCA Notices and Non-Compliance

61. Between 2012 and 2025, Plaintiff and its predecessor copyright holder have sent dozens of formal DMCA takedown notices to Gay-Torrents.org and its hosting providers, internet service providers, and payment processors. None of these notices received a substantive response, and the infringing content was not removed. Representative notices attached as Exhibit E include: (a) February 22, 2024: Formal DMCA notice sent by Plaintiff to Gay-Torrents.org (info@gay-torrents.org) and Vivacom (Bulgarian internet service provider, Sofia, Bulgaria). Identified 56 infringing URLs. No response from the Site. (b) October 7, 2025: Formal DMCA notice sent by Plaintiff to info@gay-torrents.org identifying 86 infringing URLs. No response. Additional formal DMCA notices sent between 2012 and 2023 are preserved and available at the Court's direction.

62. A cross-reference analysis of the February 2024 and October 2025 DMCA notices reveals that forty-seven (47) of the fifty-six (56) infringing links identified in February 2024 remained active on the Site in October 2025—a period of twenty months. Additionally, thirty-nine (39) new infringing links appeared in the October 2025 notice that were not present in the February 2024 notice, demonstrating that infringement on the Site increased rather than decreased during the twenty-month interval.

63. Infringing content previously reported in Plaintiff's DMCA notices remains accessible on Gay-Torrents.org as of the date of this filing.

### F. Defendant Deniau's Infringing Conduct

64. Defendant Deniau purchased two separate paid subscriptions to websites now owned by Plaintiff's principal, each subject to Terms and Conditions prohibiting redistribution of copyrighted content and containing a Cook County, Illinois forum-selection and consent-to-jurisdiction clause. Both subscriptions are documented in Plaintiff's business records and in the payment-processor (CCBill) records of Plaintiff's predecessor: (a) ThugBoy.com (October 2004). CCBill Subscription ID 1061961394. Signed up October 8, 2004, from IP address 81.48.5.220 (Lille, France, France Telecom/Wanadoo). Email: Ludovic.Deniau@wanadoo.fr.

Phone: 0670074732. Payment: MasterCard, BIN 513141. Billing name: "deniau ludovic." Billing address: 110 Boulevard de la Liberté, Lille 59000, France. (b) MixItUpBoy.com (February–March 2013). CCBill Subscription ID 0513054601000004183. Signed up February 23, 2013, from IP address 92.155.137.158 (Lille, France, France Telecom/Wanadoo). Email: ludovic.deniau@wanadoo.fr. Phone: 0670074732 (identical to the 2004 subscription). Payment: MasterCard, BIN 513141 (identical to the 2004 subscription). Billing name: "ludovic deniau" (transposition of the 2004 billing name). Billing address: 110 Boulevard de la Liberté, Lille 59000, France (identical to the 2004 subscription). The signup IP address resolved to an Orange/Wanadoo ISP hostname explicitly identifying Lille, France: "alille-656-1-204-158.w92-155.abo.wanadoo.fr."

65. The two subscriptions nine years apart are, based on identical email address, identical phone number, identical credit-card BIN, identical billing address, identical billing name (transposed), and identical IP-geolocation region (Lille, France, Orange/Wanadoo), attributable to the same natural person.

66. During his MixItUpBoy.com subscription in February and March 2013, Defendant Deniau systematically downloaded dozens of copyrighted video files from the MixItUpBoy.com member area, totaling approximately twenty-two (22) gigabytes. Defendant Deniau cancelled his subscription approximately thirty days after purchase, on the same day as his final download session—a pattern consistent with bulk acquisition for redistribution rather than ordinary consumption.

67. Each video file downloaded by Defendant Deniau bore, at the time of download, a unique cryptographic forensic identifier embedded in the MPEG-4 metadata of the file. The identifier was linked in Plaintiff's internal database to Defendant Deniau's FlavaWorks member account, his download session, and the source-file information at the moment of delivery. No other FlavaWorks subscriber received the same identifier with respect to the same downloaded file.

68. More than thirty (30) video files bearing forensic identifiers linked in Plaintiff's database to Defendant Deniau's February–March 2013 download sessions have been located on Gay-Torrents.org. Each such file bears a distinct forensic identifier traced through Plaintiff's database to Defendant Deniau; each identifier uniquely identifies the copy of the file delivered to Defendant Deniau as the source from which the copy located on Gay-Torrents.org is derived.

The identifiers, their corresponding database records, and the file-level MediaInfo data confirming the presence of the identifiers in the MPEG-4 metadata of the Gay-Torrents.org copies are maintained by Plaintiff in the ordinary course of its copyright-enforcement program and will be produced in discovery subject to such protective order as this Court may enter; they are also available for this Court's in camera inspection upon request.

69. In 2016, a cease and desist letter was sent to Defendant Deniau at his then-known residential address in France regarding his unauthorized distribution of copyrighted works. Defendant Deniau did not respond to the letter or cease his conduct.

### G. Defendants' Refusal to Comply and Public Encouragement of Infringement

70. As early as November 2012, users of Gay-Torrents.org openly discussed on the Site's public forum the $1.5 million default judgment entered in Flava Works, Inc. v. Fisher, No. 1:12-cv-01888 (N.D. Ill. Nov. 1, 2012), against another infringer of Plaintiff's predecessor in interest, and openly discussed the forensic-identifier technology by which that infringer had been identified—the same class of technology still used by Plaintiff today. The thread, titled "If ur a paying member of ANY online porn," remains publicly accessible on the Site as of the date of this filing and has been continuously accessible for more than thirteen (13) years. Participants in the thread included Site users with upload totals in excess of ninety-seven (97) terabytes and thirty-nine (39) terabytes respectively. The thread demonstrates that Defendants and the users of the Site had actual knowledge, for more than a decade preceding this action, of Plaintiff's predecessor's copyrights, of the forensic-identifier technology used to detect unauthorized redistribution on peer-to-peer networks, and of the legal consequences of infringement of those copyrights; and that Defendants nonetheless continued to operate, administer, and participate in the Site notwithstanding that knowledge. The thread is included within Exhibit G (Forum Threads).

71. On December 4, 2025, Defendant TheMan posted on the Gay-Torrents.org forum in response to a user ("kevinatl") who reported receiving a cease and desist letter from Plaintiff. TheMan, posting under his "Owner" designation, stated: "This is straight-up extortion, and people shouldn't fall for it." TheMan further encouraged users to "block" Plaintiff, falsely claimed that "We deleted all of their stuff a long time ago," and accused Plaintiff of "uploading their own shitty content themselves just so they can blackmail users afterwards."

72. TheMan's claim that the copyrighted content had been deleted is demonstrably false. As set forth above, 47 of 56 infringing links reported in February 2024 remained active in October 2025, and infringing content remains accessible on the Site as of the date of this filing.

73. On the same forum thread, on December 6, 2025, Defendant TheMan publicly posted a further message directing the user kevinatl to respond to TheMan's private message, evidencing direct coordination between the Site operator and individual members in resisting Plaintiff's enforcement efforts.

74. On December 27, 2025, Defendant matthewmancs, posting under his "Administrator" designation, responded to the same forum thread by endorsing TheMan's statement, writing: "YES! THIS REMAINS THE ANSWER."

75. On or about January 21, 2026, Defendant Marius, posting under his "Administrator" designation, edited the Site's "Banned Content" announcement—a pre-existing announcement first published on the Site on August 19, 2021 and used by Defendants since that date to ban other studios from the Site—to add "Flava Works and its affiliates" to the list of banned studios. The announcement listed FlavaWorks and numerous FlavaWorks-branded and affiliated websites by name. The pre-existence of the "Banned Content" announcement demonstrates that Defendants have maintained, since at least 2021, an operational mechanism for banning entire studios from the Site. Notwithstanding that mechanism, and notwithstanding the dozens of DMCA notices Plaintiff and its predecessor have sent since 2012, Defendants chose not to invoke that mechanism as to FlavaWorks until January 2026—more than a month after the coordinated forum campaign described in Section H below became publicly active. Further, the ban applied only to new uploads, with the announcement stating: "Staff will be deleting existing torrents without prejudice to the uploaders." Despite this representation, existing infringing content remains accessible on the Site as of the date of this filing.

76. On March 18, 2026—nearly two months after the purported "Banned Content" announcement—Defendant sgmusuk, posting under his "Administrator" designation, responded to another user who had received a cease and desist letter from Plaintiff by stating: "None of their content is even on the site anymore." This statement was demonstrably false. At the time Defendant sgmusuk made it, infringing content previously reported in Plaintiff's DMCA notices was—and remains—accessible on the Site. Defendant sgmusuk's statement

continued the false "we deleted it" narrative that Defendants had used since at least December 2025 to dissuade compliance and to mislead users into believing that Plaintiff's enforcement was baseless.

77. Defendants' "Banned Content" announcement, repeated false assurances, and public denials further demonstrate that Defendants had actual knowledge that copyrighted content was being distributed on the Site, had the ability to remove it, and chose not to do so in a complete and timely manner.

### H. Defendants' Coordinated Forum Campaign to Induce Non-Compliance and Conceal Wrongdoing

78. The forum thread described above (titled "FLAVAWORKS cease and desist email/letter") became, and remains, a focal gathering place for members of the Site to coordinate their response to Plaintiff's enforcement. The thread has, as of the date of this filing, been in continuous public operation on Gay-Torrents.org for approximately four and a half months, spans multiple pages, and is populated with posts by Defendant TheMan, by Administrator Defendants matthewmancs and sgmusuk, and by numerous members of the Site whose true identities are unknown to Plaintiff and will be pursued in discovery. Plaintiff has preserved the thread and incorporates its contents by reference.

79. The posts in the thread evidence a consistent and coordinated campaign by Site members and administrators to: (a) encourage recipients of Plaintiff's cease and desist demands to ignore those demands and refuse to comply; (b) instruct one another on techniques for evading detection of their infringing activity, including by adopting commercial VPN services, seedbox services, and by selecting Chicago, Illinois as a routing location for VPN traffic specifically in connection with torrenting on Gay-Torrents.org; (c) promote the false narrative that the copyrighted content has been "deleted" from the Site; (d) attack Plaintiff and its principal Phillip Bleicher personally, including by posting links to third-party websites characterizing Plaintiff's principal in disparaging terms; and (e) speculate about the mechanics of Plaintiff's detection methods, for the express purpose of helping fellow members defeat future detection.

80. The forum campaign is not confined to rhetoric. In multiple instances, members who publicly posted in the thread either (i) themselves acknowledged receipt of Plaintiff's enforcement materials; (ii) had Site-profile upload totals reflecting multiple terabytes—in several cases tens

of terabytes, and in one case in excess of two hundred terabytes—of content uploaded to Gay-Torrents.org; or (iii) both. Their participation in the thread evidences both knowledge of Plaintiff's copyrights and a deliberate decision to continue infringing activity notwithstanding that knowledge.

81. The forum campaign also evidences consciousness of wrongdoing through subsequent account deletion. After Plaintiff initiated enforcement activity and the forum thread became active, multiple Site members who had publicly participated in the thread and, on Plaintiff's information and belief, had received Plaintiff's enforcement materials subsequently deleted their Site accounts, so that their usernames and profile information no longer appear on the Site and their posts in the thread are now attributed only to anonymous placeholder identifiers ("unknown[XXXX]"). These deletions post-date Plaintiff's enforcement correspondence and are consistent with a deliberate effort to frustrate identification, service, and the preservation of evidence. Plaintiff has preserved the thread contents as displayed prior to the deletions.

82. Defendants TheMan and the seven Administrator Defendants, having continuous administrative control over the Site and its forum, at all relevant times had actual knowledge of the contents of the forum thread, had the ability to moderate, remove, or lock the thread, and took no action to stop the coordinated campaign of non-compliance. To the contrary, TheMan and matthewmancs affirmatively contributed to the campaign, and sgmusuk subsequently contributed to the campaign, by posting in the thread under their official "Owner" and "Administrator" designations.

### I. Defendants John Does #9 Through #47 (the Member Defendants)

83. The Member Defendants (Does #9 through #47) are thirty-nine (39) U.S.-resident members of Gay-Torrents.org, each of whom, as set forth in greater detail in Paragraph 22 and identified by username and user identification number in Exhibit D, is alleged to have engaged in one or more of the following categories of conduct in concert with the named Defendants and with the other Member Defendants: (a) purchase of a paid VIP membership that directly funded the Site's infringing operations; (b) public participation in the coordinated forum campaign described in Section H above; and/or (c) uploading, downloading, and/or seeding one or more of Plaintiff's copyrighted works on or through the Site, as evidenced by forensic identifiers traced through Plaintiff's database to Plaintiff's copyrighted works.

84. By nature of the BitTorrent protocol, each Defendant who downloaded copyrighted works simultaneously uploaded (or "seeded") portions of those works to other users, thereby both reproducing and distributing copyrighted content.

### J. Post-Filing Operator Flight and Continuing Concerted Evasion

85. On April 28, 2026, Plaintiff filed the original Complaint in this action [Dkt. 1]. Within days thereafter, and without prior notice to the Site's own administrators or its user community, Gay-Torrents.org was taken offline. The Site remains offline as of the date of this First Amended Complaint, on information and belief by reason of an affirmative shutdown directed by the operator-tier Defendants TheMan, BYZONA LTD, Tsekov, and Nazarov.

86. On or about May 2, 2026, a user on the Reddit platform initiated a thread in the subreddit r/askgaybros titled "Is gay-torrents.org down?" The first substantive reply, posted by a user identifying as "CdnDadBeef," linked the shutdown directly to Plaintiff's filing of this action by posting a hyperlink to a news article reporting on Plaintiff's lawsuit. A second user, identifying as "Street_Anon," independently linked the shutdown to Plaintiff's lawsuit by citing the same news report. A true and correct copy of representative screen captures of the thread is attached as Exhibit I.

87. On May 15, 2026, a user identifying as "LoyalteeMeOblige," who self-described as being in direct contact with one or more administrators of Gay-Torrents.org, posted the following statement in the thread, which Plaintiff quotes verbatim from a preserved screen capture included in Exhibit I: "I am in contact with one of them, and while I can't say how I got this information they are completely in the dark too. Whatever happened, the owners didn't inform either of them prior to shutting the site."

88. The same user posted a follow-up statement: "As per my conversation with two mods they aren't sure, they owners aren't replying to their emails so they believe they had taken the site down on purpose." A copy of this statement, as captured from the thread, is included in Exhibit I.

89. The statements quoted in Paragraphs 87 and 88 above, by a user who self-identifies as being in direct communication with two administrators of the Site, constitute contemporaneous third-party evidence that the operator-tier Defendants took Gay-Torrents.org offline deliberately and

unilaterally, did not notify or consult their own administrators before doing so, and have since refused to respond to administrator communications. These facts support the inference that the operator-tier Defendants undertook the shutdown to frustrate service of process, dissipate assets, destroy evidence, and otherwise evade the jurisdiction of this Court.

90. The Reddit thread further evidences ongoing concerted evasion of Plaintiff's enforcement, materially identical in form and purpose to the on-Site forum campaign described in Section H above but now relocated to a public third-party platform. Participants in the thread have, in the post-filing window, openly discussed deletion of infringing materials, encouraged the use of VPNs to evade detection, and posted hyperlinks to third-party content characterizing Plaintiff and Plaintiff's principal in disparaging terms.

91. The post-filing operator flight described in this Section J supports, on the merits, Plaintiff's allegations of willfulness for purposes of 17 U.S.C. § 504(c)(2) and Plaintiff's allegations of fraudulent concealment in Count VI below. It supports the urgency of the asset-freeze relief and the records-preservation relief Plaintiff is seeking concurrently with this First Amended Complaint, because the operator-tier Defendants' deliberate disappearance from public communication creates the realistic prospect that proceeds in the BYZONA Skrill and Nazarov PayPal accounts are being dissipated and that records held by Cloudflare, Inc. and Tucows, Inc. concerning the identity of the customer of record for the gay-torrents.org domain may be deleted or modified absent court intervention. It further supports the substantive Rule 20 joinder nexus alleged in Paragraph 24 above: the coordinated decision of the operator-tier Defendants to take the Site offline immediately after Plaintiff's filing, and their continuing refusal to respond to their own administrators, evidences that those Defendants operated as a unified principal enterprise in fact.

## COUNT I

### Direct Copyright Infringement – 17 U.S.C. § 501

*(As to Defendants Deniau, TheMan (Doe #1), the Administrators (Does #2–#8), and the Member Defendants (Does #9–#47))*

92. Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

93. Defendants, without authorization or license, have reproduced and distributed (and, in the case of the user and administrator Defendants, have also made available for further reproduction and distribution by others through the BitTorrent protocol) copyrighted works owned by Plaintiff's principal and exclusively licensed to Plaintiff, in violation of 17 U.S.C. § 106(1) and 17 U.S.C. § 106(3).

94. Defendants' conduct interferes with the exclusive rights to reproduce, distribute, and display the copyrighted works under 17 U.S.C. § 106.

95. Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

96. As a result of Defendants' direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT II

### Contributory Copyright Infringement

*(As to All Defendants)*

97. Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

98. On information and belief, Defendants aided, abetted, encouraged, and materially contributed to the infringement of copyrights by copying, uploading, posting, downloading, seeding, and/or distributing copyrighted works without permission.

99. Defendants John Doe #1 (TheMan) and John Does #2 through #8 (the administrators) materially contributed to infringement by operating and administering the Gay-Torrents.org platform, providing the tracker infrastructure, maintaining torrent listings, refusing to remove infringing content despite actual knowledge of the infringement, and presiding over the forum campaign described in Section H above.

100. Defendants BYZONA LTD, Tsekov, and Nazarov are contributorily liable because, as alleged in Paragraph 4 above, they are (upon information and belief) either identical to Defendant TheMan or act in concert with him as principals and nominees in a common enterprise to operate Gay-Torrents.org and to receive and conceal the proceeds thereof. They

do not provide a general-purpose service to the public with only incidental knowledge of infringing use; their purported "web-hosting" fronts (247host.eu and cloud2max.club) are shell entities that provide no actual web-hosting services to the public and exist for the sole purpose of receiving payments for Gay-Torrents.org VIP memberships and concealing the identities of the Site's true beneficiaries from regulated payment processors, financial institutions, and copyright owners. That purpose-built concealment infrastructure both (a) constitutes affirmative inducement of and active encouragement of the Site's infringing activity by sustaining the financial incentive structure for uploading under which paying VIP members receive upload credits, and (b) is "tailored to infringement" within the meaning of Cox Communications, Inc. v. Sony Music Entertainment, 607 U.S. ___ (2026), Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005), and Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417 (1984), because the shell entities are not capable of any substantial noninfringing use.

101. Defendants had actual or constructive knowledge of the infringing activity. This knowledge is demonstrated by, among other things: (a) the dozens of DMCA notices sent over more than a decade; (b) TheMan's December 2025 forum post acknowledging Plaintiff's enforcement efforts; (c) the January 2026 "Banned Content" announcement expressly naming Plaintiff and numerous FlavaWorks-branded and affiliated websites by name; (d) Defendant sgmusuk's March 2026 public statement on behalf of Site administration concerning Plaintiff's content on the Site; and (e) the Site's own DMCA page acknowledging the existence of copyright infringement procedures.

102. As a result of Defendants' contributory copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

## COUNT III

### Vicarious Copyright Infringement

*(As to Defendants TheMan, Administrators (Does #2–#8), BYZONA LTD, Tsekov, Nazarov, and the Member Defendants (Does #9–#47))*

103. Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

104. Defendants TheMan and Does #2 through #8 had the right and ability to supervise and control the infringing activity on Gay-Torrents.org. As the owner and administrators of the Site, they had the ability to remove infringing torrent listings, ban infringing users, disable downloads, and shut down the Site entirely.

105. Defendants BYZONA LTD, Tsekov, and Nazarov had the right and ability to supervise and control the infringing activity indirectly by ceasing to process payments for the Site's VIP memberships. Payment-processor withdrawal has historically been, and would here be, sufficient to disable or materially diminish the Site's ability to continue operating.

106. Defendants derived a direct financial benefit from the infringing activity. The Site's VIP membership system generates revenue in euros, and the availability of copyrighted content serves as the primary draw for users to visit the Site and purchase VIP memberships. As alleged in Paragraphs 56 through 60 above, Defendants' revenue from the Site's infringing operations, on information and belief, exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009.

107. Despite having actual knowledge of the infringement, the right and ability to stop it, and a financial interest in the infringing activity, Defendants failed to take reasonable steps to prevent or stop the infringement.

108. As a result, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

## COUNT IV

### Inducement of Copyright Infringement

*(As to Defendants TheMan and Administrators (Does #2–#8))*

109. Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

110. Defendants TheMan and the administrators, through their operation and administration of Gay-Torrents.org, intentionally induced, encouraged, and promoted copyright infringement by

creating and maintaining a platform whose primary purpose is the unauthorized distribution of copyrighted works.

111. The Site's VIP membership system explicitly incentivizes the uploading of infringing content by awarding upload credits in exchange for payment (1 EUR = 2 GB of upload capacity) and granting ratio immunity to paying members. These features are designed to encourage users to upload more copyrighted content.

112. TheMan's December 2025 forum post actively encouraging users to ignore Plaintiff's cease and desist demands, matthewmancs' endorsement of that position, sgmusuk's March 2026 continuation of the "we deleted it" narrative, and the administrators' tolerance of the coordinated forum campaign described in Section H all constitute affirmative acts of inducement to continue infringing activity.

113. As a result, Plaintiff is entitled to recover actual and/or statutory damages, costs, and reasonable attorney's fees, as well as injunctive relief.

## COUNT V

### Unjust Enrichment

*(As to Defendants Deniau, TheMan, Administrators (Does #2–#8), BYZONA LTD, Tsekov, and Nazarov)*

114. Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

115. Defendants have been unjustly enriched at Plaintiff's expense through conduct that includes elements beyond mere copyright infringement. Defendant Deniau breached the contractual restrictions of his paid FlavaWorks subscriptions by redistributing content he had agreed not to redistribute, and retained the economic benefit of his paid membership access while using that access to supply Gay-Torrents.org with copyrighted material—an enrichment arising from breach of contract, not from the infringement itself. Defendants TheMan, the administrators, BYZONA LTD, Tsekov, and Nazarov derived revenue through a payment-concealment scheme designed to deceive regulated payment processors, their users' financial institutions, and copyright owners about the nature and beneficiaries of transactions—an enrichment arising from affirmative deception and breach of duties owed to regulated financial intermediaries,

Page 28

independent of any underlying infringement. On information and belief, and as alleged in Paragraphs 56 through 60 above, the amount of Defendants' unjust enrichment exceeds €7,000,000 (approximately $7.4 million USD) in revenue derived since the Site's launch in 2009, plus such additional amounts as may be established through discovery. To the extent any component of this claim is preempted by 17 U.S.C. § 301, Plaintiff pleads this Count in the alternative to its federal copyright claims and relies upon the independent-duty hooks set forth in this Paragraph (breach of FlavaWorks contractual terms; deception of regulated payment processors and their users' financial institutions).

116.    Defendants' enrichment was at the expense of Plaintiff's principal, who lost revenue from potential subscribers who obtained copyrighted content for free through Gay-Torrents.org instead of purchasing legitimate subscriptions.

117.    It would be unjust and inequitable for Defendants to retain these benefits without compensating Plaintiff.

## COUNT VI

### Fraudulent Concealment

*(As to Defendants TheMan, BYZONA LTD, Tsekov, and Nazarov)*

118.    Plaintiff incorporates and re-alleges paragraphs 1 through 91 as though fully set forth herein.

119.    Defendants TheMan, BYZONA LTD, Tsekov, and Nazarov engaged in affirmative acts of concealment designed to hinder Plaintiff's investigation and enforcement of its copyrights, and to prevent Plaintiff, users' financial institutions, payment processors, and law enforcement from identifying the true beneficiaries of Gay-Torrents.org's operations and the true nature of the transactions through which the Site is funded.

120.    The affirmative acts of concealment include, without limitation: (a) routing VIP-membership payments through at least two separate shell entities (247host.eu and cloud2max.club), each disguised as a legitimate web-hosting business; (b) using rotating merchant names ("BYZONA LTD" and "CLOUD2MAX") to prevent cross-identification; (c) affirmatively advertising to users that the Site's transactions will not appear on their bank or credit-card statements in a manner identifying Gay-Torrents.org or its nature; (d) opening

successor merchant accounts under new shell entities each time a prior merchant account is terminated by the processor; (e) falsely claiming on the Site's DMCA page to operate a notice-and-takedown procedure while making no meaningful response to the dozens of notices received over more than a decade; (f) falsely claiming publicly, through Defendant TheMan in December 2025 and through Defendant sgmusuk in March 2026, that the copyrighted content had been deleted from the Site when in fact it remained accessible; and (g) tolerating and administering a public forum on the Site in which members were coached to delete their accounts, adopt VPN and seedbox services, and otherwise conceal their identities and activity from Plaintiff, after which multiple such members in fact deleted their Site accounts so that their identifying information no longer appeared on the Site. Defendants further concealed from the public, from regulated payment processors, and from copyright owners the commercial scale of the Site's revenue, which as alleged in Paragraphs 56 through 60 above, on information and belief, exceeds €7,000,000 (approximately $7.4 million USD) since the Site's launch in 2009.

121.    The success of Defendants' concealment scheme is further evidenced by its operation against regulated financial institutions. In 2017, PayPal, Inc. terminated the merchant accounts associated with info@cloud2max.eu and nadatanasov@comic.com following complaints concerning payments processed to Gay-Torrents.org. Rather than cease the unlawful use of PayPal, Defendants caused successor merchant accounts to be opened under new shell identities—including the cloud2max.club account in the name of Defendant Nazarov—through which the same revenue stream from Gay-Torrents.org continued to be processed. Similarly, in 2017, Plaintiff's predecessor in interest sent a formal DMCA notice to Skrill concerning payments routed to Gay-Torrents.org; notwithstanding that notice, Skrill-processed payments to Defendant BYZONA LTD for Gay-Torrents.org VIP memberships have continued uninterrupted through the date of this filing. Defendants' ability to maintain, replace, and re-establish merchant accounts with regulated processors despite prior terminations and formal infringement notices demonstrates both the effectiveness of Defendants' concealment and its deliberate design.

122.    These acts of concealment were material. They deprived Plaintiff and third parties of information needed to enforce copyrights, pursue civil remedies, and cooperate with regulated

financial intermediaries. They prolonged the period over which infringement continued unabated.

123. Plaintiff justifiably relied, and reasonably was entitled to rely, on the following: (a) that regulated payment processors operating under applicable anti-money-laundering, know-your-customer, and merchant-verification frameworks—including Skrill USA, Inc. (NMLS ID 935195) and PayPal, Inc.—would accurately identify the true beneficial owners of merchant accounts processing commercial transactions through their systems; (b) that merchant-identification information publicly displayed in connection with processed transactions (including the merchant names "BYZONA LTD" and "CLOUD2MAX") would correspond to the actual businesses conducting the underlying transactions rather than to shell entities designed to conceal the true operator; and (c) that the Site's public DMCA-compliance representations at gay-torrents.org/dmca.php would be honored in substance rather than serve as a false-front response mechanism. But for Defendants' affirmative concealment, Plaintiff would have been able to identify the true recipients of the Site's revenue significantly earlier and to pursue enforcement against those recipients before the harm to Plaintiff's copyrights accrued to its current magnitude. As a direct and proximate result of Defendants' concealment, Plaintiff suffered injuries separate and apart from the underlying copyright infringement, including without limitation: (i) the costs of multi-year investigative efforts to trace the Site's revenue flow through successive shell entities; (ii) the costs of test purchases, forensic watermark analysis, and third-party-subpoena practice necessary to defeat Defendants' concealment; (iii) the delay in identifying the proper parties to sue, during which time additional infringement of Plaintiff's copyrights continued to accrue; and (iv) the dissipation of potentially recoverable assets that occurred during the period in which Defendants' true identities remained concealed.

124. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered damages in an amount to be determined at trial, and is entitled to punitive damages for Defendants' willful and deliberate misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FlavaWorks Entertainment, Inc. respectfully requests that this Honorable Court enter the following relief:

a. A judgment in favor of Plaintiff and against all Defendants on each Count of this First Amended Complaint;

b. An award of actual damages sustained by Plaintiff as a result of Defendants' infringement, the amount of which is to be determined at trial;

c. In the alternative, and at Plaintiff's election pursuant to 17 U.S.C. § 504(c)(1), an award of statutory damages for each of the works identified in Exhibit B, each of which was registered with the United States Copyright Office before the commencement of any infringement alleged herein and therefore qualifies for statutory damages under 17 U.S.C. § 412, including enhanced statutory damages of up to $150,000 per work infringed for Defendants' willful infringement pursuant to 17 U.S.C. § 504(c)(2);

d. Disgorgement of any profits Defendants have derived from their infringement of Plaintiff's Intellectual Property;

e. A temporary restraining order, preliminary injunction, and permanent injunction against Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them, from: (a) reproducing, distributing, displaying, or making available for download copyrighted works through Gay-Torrents.org or any other website or platform; (b) operating, maintaining, or administering Gay-Torrents.org or any successor, mirror, or affiliated website for the purpose of distributing copyrighted content without authorization; (c) encouraging, inducing, or assisting any third party to infringe copyrights owned by Plaintiff's principal; (d) transmitting, remitting, receiving, or processing any payment whose beneficial recipient is the operator of, or contributor to, Gay-Torrents.org; and (e) deleting, destroying, altering, or otherwise disposing of any records, user data, account information, forum posts, transaction records, or other materials relevant to this action;

f. An order freezing (a) the Skrill payment account(s) associated with Gay-Torrents.org, BYZONA LTD, Orlin Tsekov, and the principal beneficiary thereof, and (b) the PayPal merchant account associated with cloud2max.club held by or for the benefit of Evgenii Nazarov, together with any successor or replacement merchant accounts opened by Defendants for the purpose of receiving the proceeds of the Site's operations, to prevent the dissipation of assets during the pendency of this action, in an amount not less than

€7,000,000 (approximately $7.4 million USD), reflecting the revenue Defendants are alleged on information and belief to have derived from the Site's infringing operations since 2009;

g. An order directing Cloudflare, Inc. to preserve all records in its possession, custody, or control relating to the domain gay-torrents.org, including account records, DNS configuration records, log records, origin-server IP records, and communications with the customer of record, pending the Court's entry of final judgment in this action, and to disclose to Plaintiff the identity, billing information, IP history, and origin-server IP records of the customer of record;

h. An order directing Tucows, Inc. (as registrar of record for the domain gay-torrents.org) to preserve all records in its possession, custody, or control relating to the domain gay-torrents.org, and to place a registrar lock on the domain preventing transfer to any third party during the pendency of this action;

i. As part of final judgment, an order directing Tucows, Inc. to transfer all right, title, and interest in the domain gay-torrents.org to Plaintiff FlavaWorks Entertainment, Inc., as a form of permanent equitable injunctive relief preventing the further use of the domain for the infringement of Plaintiff's copyrighted works;

j. Authorizing Plaintiff to serve expedited third-party subpoenas on (a) Skrill USA, Inc., PayPal, Inc., Cloudflare, Inc., and Tucows, Inc., to identify account holders, billing records, transaction histories, origin-server IP addresses, forum-posting records, and account-deletion records relating to the named Defendants and the Gay-Torrents.org enterprise; and (b) the email-service providers corresponding to the registered email addresses of the Member Defendants (including without limitation Google LLC, Microsoft Corporation, Apple Inc., and Yahoo! Inc.), and, where applicable as a secondary means of identification, the internet service providers corresponding to IP addresses associated with the Member Defendants;

k. Pursuant to 17 U.S.C. § 503, an order impounding and requiring Defendants to deliver up for destruction all copies of copyrighted works in their possession, custody, or control, and all records or devices by means of which such copies have been reproduced or distributed;

l. An award of Plaintiff's costs of this action, including reasonable attorney's fees pursuant to 17 U.S.C. § 505;

m. An award of punitive damages as deemed just and proper by this Court, including in connection with Count VI (Fraudulent Concealment);

n. An order requiring Defendants to submit to the Court and serve upon Plaintiff a written report, under oath, setting forth the manner and form in which Defendants have complied with any injunction entered in this action;

o. Leave to Plaintiff under Federal Rule of Civil Procedure 15 to amend this First Amended Complaint to add additional defendants as their identities are established through Plaintiff's ongoing investigation and through subpoenas issued under 17 U.S.C. § 512(h) or otherwise authorized in this action; and

p. Such other and further relief as this Court deems just, reasonable, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues properly triable by jury in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 26, 2026

Respectfully Submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
FlavaWorks Entertainment, Inc.
2705 West Fulton Street
Chicago, IL 60612
Telephone: 305-438-9450
Email: Corinthia@flavaworks.com

Counsel for Plaintiff FlavaWorks Entertainment, Inc.

## VERIFICATION

I, Phillip Bleicher, hereby declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, as follows:

I, Phillip Bleicher, have read the foregoing First Amended Verified Complaint and verify, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the factual allegations therein are true and correct to the best of my knowledge, except as to matters alleged on information and belief, which I believe to be true.

Executed this 26th day of May, 2026, at Chicago, Illinois.

Phillip Bleicher