**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-04857 |
| | ) | |
| v. | ) | Hon. John Robert Blakey |
| | ) | |
| Ludovic Deniau, et al., | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff FlavaWorks Entertainment, Inc., by and through its undersigned counsel, respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 65 and the Court's inherent equitable authority, for entry of a Temporary Restraining Order and Preliminary Injunction against Defendants BYZONA LTD, Orlin Tsekov, Evgenii Nazarov, John Doe #1 (TheMan), and John Does #2 through #8 (the "Enjoined Defendants"), in the narrowed form set forth below.

This Renewed Motion follows the Court's Minute Entry of May 4, 2026 [Dkt. 7], which denied Plaintiff's prior motion to seal Plaintiff's Temporary Restraining Order materials [Dkt. 3] and motion for expedited discovery [Dkt. 6] on the ground that personal jurisdiction had not been properly pleaded as to each Defendant. Plaintiff's First Amended Verified Complaint cures the pleading deficiencies the Court identified. With prima facie personal jurisdiction now established as to each Enjoined Defendant on a per-defendant basis, the conditions precedent to the issuance of injunctive relief identified in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) and *Am. Bridal & Prom Industries Ass'n v. Schedule A Defendants*, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016) are satisfied.

As more fully set forth in the accompanying Memorandum of Points and Authorities and the Declaration of Phillip Bleicher submitted herewith, Plaintiff has shown (1) a likelihood of success on the merits, (2) irreparable harm absent injunctive relief, (3) the inadequacy of legal remedies, and (4) that the balance of equities and the public interest favor injunctive relief. Plaintiff has further established the urgency required for ex parte temporary restraining relief by reference to

Page 1

facts that have materially changed since the Court's May 4 Order—specifically, the post-filing shutdown of Gay-Torrents.org and the operator-tier Defendants' coordinated flight described in Section J of the First Amended Complaint.

**Plaintiff has narrowed the scope of relief sought from that requested in the original (now-vacated) motion. This Renewed Motion does not seek anti-circumvention relief against any Member Defendant, does not seek the sealing of any filing, and does not seek to enjoin any business activity of any defendant beyond the specific accounts, records, and domain matters identified below.**

## Relief Sought

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Temporary Restraining Order, to be converted to a Preliminary Injunction following hearing, providing as follows:

1. Asset Freeze (BYZONA Skrill Account). Skrill USA, Inc. shall immediately freeze and refrain from disbursing the proceeds of the Skrill merchant account held by or for the benefit of Defendant BYZONA LTD (including any account associated with the email address or trade names BYZONA LTD, 247host, or 247host.eu) and any successor or replacement merchant account opened by or for the benefit of BYZONA LTD or Defendant Tsekov for the receipt of payments associated with Gay-Torrents.org, in an aggregate amount not less than €7,000,000 (approximately $7.4 million USD).

2. Asset Freeze (Nazarov PayPal Account). PayPal, Inc. shall immediately freeze and refrain from disbursing the proceeds of the PayPal merchant account held by or for the benefit of Defendant Evgenii Nazarov (including the merchant account associated with cloud2max.club or the merchant statement descriptor CLOUD2MAX) and any successor or replacement merchant account opened by or for the benefit of Nazarov for the receipt of payments associated with Gay-Torrents.org, in an aggregate amount not less than €7,000,000 (approximately $7.4 million USD).

3. Cloudflare Records Preservation. Cloudflare, Inc. shall preserve, pending further order of this Court, all records in its possession, custody, or control relating to the domain gay-torrents.org, including without limitation: account records of the customer of record; billing

records; DNS configuration records; access logs; origin-server IP records; abuse-report records; and communications with the customer of record.

4. **Cloudflare Origin-Server IP Disclosure.** Cloudflare, Inc. shall disclose to Plaintiff, on an ongoing basis as such information may be updated, the origin-server IP address(es) associated with the gay-torrents.org domain at all times the Site has been served through Cloudflare's content-delivery network.

5. **Tucows Records Preservation.** Tucows, Inc. shall preserve, pending further order of this Court, all records in its possession, custody, or control relating to the domain gay-torrents.org, including without limitation: registrant of record; billing records; registration history; transfer history; account-access logs; and any related communications.

6. **Tucows Registrar Lock.** Tucows, Inc. shall place a registrar lock on the domain gay-torrents.org, preventing transfer of the domain to any third-party registrar or to any other registrant during the pendency of this action, without further order of this Court.

7. **Defendant-Directed Preservation.** The Enjoined Defendants, and any agent, servant, employee, attorney, successor, or assign acting in concert with them, shall not delete, destroy, alter, conceal, or otherwise dispose of any record, user data, account information, forum post, payment record, transaction record, server file, log file, communication, or other material relating to Gay-Torrents.org, 247host.eu, cloud2max.club, or any other associated property.

8. **Defendant-Directed Disclosure.** The Enjoined Defendants shall, within seven (7) days of service of this Order, file with the Court and serve upon Plaintiff a sworn written statement identifying (a) the true name and last-known address of each Enjoined Defendant; (b) the present location and current balance of any account, asset, or property received as a result of payments associated with Gay-Torrents.org; and (c) any transfer of any such asset that has occurred since April 28, 2026.

Plaintiff further requests that the Court set a hearing on Plaintiff's motion for Preliminary Injunction within fourteen (14) days of entry of the Temporary Restraining Order, in accordance with Federal Rule of Civil Procedure 65(b)(3), and that Plaintiff be required to post bond in such

reasonable amount as the Court deems appropriate, which Plaintiff respectfully suggests should not exceed $5,000.00 in light of the limited and reversible nature of the relief sought.

DATED: May 27, 2026

Respectfully submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
FlavaWorks Entertainment, Inc.
2705 West Fulton Street
Chicago, IL 60612
Telephone: 305-438-9450
Email: Corinthia@flavaworks.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| FlavaWorks Entertainment, Inc., | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-04857 |
| | ) | |
| v. | ) | Hon. John Robert Blakey |
| | ) | |
| Ludovic Deniau, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I. INTRODUCTION

On May 4, 2026, this Court denied Plaintiff's original motions for a temporary restraining order and for expedited discovery [Dkts. 3, 6] on the procedural ground that personal jurisdiction had not been properly pleaded. The Court invited Plaintiff to amend its complaint by May 26, 2026 to allege facts supporting joinder and the exercise of personal jurisdiction over each defendant. Plaintiff has done so. The First Amended Verified Complaint pleads personal jurisdiction defendant-by-defendant and substantively justifies the joinder of all Defendants under Federal Rule of Civil Procedure 20(a)(2).

With the procedural impediment cured, Plaintiff now renews its request for injunctive relief in narrowed form. The relief Plaintiff seeks is no longer the broad anti-circumvention package contemplated in the original (now-vacated) TRO papers; it is targeted to (i) freezing the Skrill USA, Inc. and PayPal, Inc. merchant accounts through which the proceeds of the Site's infringement have been collected; (ii) preserving and disclosing the records of Cloudflare, Inc. (the Site's content-delivery network) and Tucows, Inc. (the Site's domain registrar) necessary to identify the operator-tier Defendants and trace the proceeds of infringement; (iii) placing a registrar lock on the gay-torrents.org domain to prevent transfer of the domain mid-case; and (iv) requiring the Enjoined Defendants to preserve evidence and disclose their identities and assets.

The urgency for this relief has materially increased since the Court's May 4 Order. Within days of Plaintiff's April 28 filing, the operator-tier Defendants caused Gay-Torrents.org—a continuously

operated commercial platform with more than sixteen years of history—to be taken offline. They did so unilaterally, without notice to their own administrators, and have since refused to respond to administrator inquiries. Public third-party reporting and direct admin-side testimony, set forth in Section J of the First Amended Complaint, document the operator-tier flight. Plaintiff has every reasonable basis to believe that absent immediate Court intervention, the operator-tier Defendants are dissipating the proceeds of infringement held in the BYZONA Skrill account and the Nazarov PayPal account and are at risk of deleting or transferring the records of the operator's identity held by Cloudflare and Tucows.

## II. FACTUAL BACKGROUND

Plaintiff respectfully incorporates by reference the factual allegations of the First Amended Verified Complaint, verified by the Declaration of Phillip Bleicher submitted herewith. The facts most material to this Renewed Motion may be briefly summarized as follows:

### A. The Site and the Operator Tier

Gay-Torrents.org was a private, invite-only BitTorrent tracker that operated continuously from June 2009 through its post-filing shutdown in early May 2026. Compl. ¶¶ 43-47. It had approximately 20,671 currently active members and had registered more than 146,000 members historically. Compl. ¶ 43. The Site was operated by Defendant John Doe #1 ("TheMan") and seven administrator-level Doe Defendants. Compl. ¶¶ 10-21. Its commercial operations were funded by paid VIP memberships processed through two payment channels: (i) Skrill USA, Inc., remitting to a merchant account in the name of Defendant BYZONA LTD (whose Executive Manager is Defendant Tsekov); and (ii) PayPal, Inc., remitting to a merchant account in the name of Defendant Nazarov. Compl. ¶¶ 48-55. Plaintiff documented both payment channels through paired test purchases on April 1, 2026, with sequential invoice numbers (#72531 and #72532). Compl. ¶¶ 50-53; Bleicher Decl. ¶¶ 10-11 & Exs. H1, H2.

### B. The Concealment Scheme and Revenue Scale

Defendants' payment-concealment scheme is designed to deceive regulated payment processors, end-user financial institutions, and copyright owners as to the true nature and beneficiaries of the Site's transactions. Compl. ¶¶ 48-55. Defendants advertise this concealment expressly on the Site ("On Your bank account/credit card statement You WON'T see anything related to Gay/Adult/Torrents site"). Compl. ¶ 48. The concealment has evolved over years in direct response

to prior enforcement: when PayPal terminated predecessor accounts in 2017, Defendants opened successor accounts under new shell identities and continued the same revenue stream. Compl. ¶ 55. On information and belief, Defendants have derived more than €7,000,000 (approximately $7.4 million USD) from the Site's infringing operations. Compl. ¶ 58; Bleicher Decl. ¶ 13.

### C. Forensic Watermark Evidence

Plaintiff's principal employs a forensic-watermarking system that embeds a unique cryptographic identifier into every file delivered to a FlavaWorks member. Compl. ¶ 42. More than thirty (30) video files bearing forensic identifiers traced through Plaintiff's database to Defendant Deniau's 2013 download sessions have been located on Gay-Torrents.org. Compl. ¶¶ 67-68; Bleicher Decl. ¶¶ 14-18.

### D. DMCA Non-Compliance and Public Encouragement of Infringement

Despite dozens of formal DMCA notices over more than a decade, Defendants have refused to remove infringing content; 47 of 56 infringing links reported in February 2024 remained active in October 2025. Compl. ¶¶ 61-63. Defendant TheMan publicly characterized Plaintiff's copyright enforcement as "straight-up extortion" (December 4, 2025); Defendant matthewmancs endorsed that statement (December 27, 2025); Defendant Marius edited the Site's "Banned Content" announcement to add FlavaWorks (January 21, 2026); and Defendant sgmusuk falsely stated to Site users that Plaintiff's content had been deleted from the Site (March 18, 2026). Compl. ¶¶ 70-77.

### E. Post-Filing Operator Flight

Plaintiff filed the original Complaint on April 28, 2026. Within days, Gay-Torrents.org was taken offline. The Site remains offline as of the date of this Memorandum. The shutdown was undertaken unilaterally by the operator-tier Defendants without prior notice to their own administrators; the operator-tier Defendants have since refused to respond to administrator communications. Public third-party platforms (Reddit, in the r/askgaybros thread titled "Is gay-torrents.org down?") have hosted ongoing discussion in which the shutdown has been linked to Plaintiff's filing of this action; users have, in the post-filing window, continued the same coordinated evasion conduct (VPN coaching, deletion solicitation, personal attacks on Plaintiff's principal) that previously occurred on the Site's own forums. See Bleicher Decl. ¶¶ 25-30.

### III. LEGAL STANDARD

To obtain a temporary restraining order or preliminary injunction in the Seventh Circuit, the moving party must demonstrate: (1) some likelihood of success on the merits; (2) that traditional legal remedies would be inadequate; and (3) that the moving party will suffer irreparable harm without the injunction. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If the moving party satisfies these threshold requirements, the court then weighs the harm a denial of the injunction would cause the moving party against the harm an injunction would cause the non-moving party, and considers the public interest. *Id*. The Seventh Circuit applies a "sliding scale" approach: the stronger the showing of likelihood of success, the less heavily must the balance of harms weigh in the movant's favor. Id.

A preliminary injunction (and a fortiori a temporary restraining order) requires personal jurisdiction over the enjoined defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant."); *Am. Bridal & Prom Indus. Ass'n v. The Partnerships & Unincorporated Associations Identified on Schedule A*, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016) ("For a TRO or preliminary injunction order to be valid, the issuing Court must have personal jurisdiction over the defendants."). This is the principle the Court invoked in its May 4 Order [Dkt. 7]. The First Amended Complaint now pleads prima facie personal jurisdiction over each Enjoined Defendant on a per-defendant basis, satisfying the threshold this Court identified.

### IV. ARGUMENT

#### A. Plaintiff Has Established a Likelihood of Success on the Merits.

Plaintiff's likelihood of success on the merits is overwhelming. The First Amended Complaint pleads six causes of action, each of which is supported by detailed, documented, forensically corroborated factual allegations.

As to Count I (Direct Infringement) against Defendant TheMan and the administrator Defendants, the operator-tier role in the reproduction and distribution of Plaintiff's copyrighted works through Gay-Torrents.org is documented by (i) more than thirty (30) forensic watermark traces; (ii) dozens of DMCA notices spanning more than a decade; (iii) cross-reference data showing 47 of 56

infringing links persisting twenty months after notice; and (iv) the operators' own admissions and public denials in the December 2025 – March 2026 forum thread. Compl. ¶¶ 43-84.

As to Count II (Contributory) and Count IV (Inducement) against the operator-tier Defendants, the Site's VIP-membership system expressly incentivizes uploading of infringing content through upload credits (1 EUR = 2 GB of upload capacity) and ratio immunity. Compl. ¶ 45. The Site's payment-concealment infrastructure (247host.eu and cloud2max.club) is "tailored to infringement" within the meaning of *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913 (2005), and *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417 (1984), because the shell entities provide no actual web-hosting services and exist exclusively to receive payments for VIP membership on a piracy site. Compl. ¶ 105.

As to Count III (Vicarious) against the operator-tier Defendants, Defendants TheMan and the administrators had the right and ability to supervise and control infringement on the Site—an authority they ultimately exercised, unilaterally, in the post-filing shutdown. Compl. ¶ 109. Defendants BYZONA, Tsekov, and Nazarov could have controlled infringement by ceasing payment processing. Compl. ¶ 110. Defendants derived direct financial benefit, on information and belief in excess of €7,000,000. Compl. ¶ 111.

As to Count VI (Fraudulent Concealment) pleaded with Rule 9(b) particularity, Plaintiff alleges six discrete affirmative acts of concealment with speaker, audience, date, act, and consequence. Compl. ¶¶ 123-129.

### B. Traditional Legal Remedies Are Inadequate.

Money damages alone cannot remedy the harms Plaintiff faces. The proceeds of the Site's infringing operations—held in the BYZONA Skrill account and the Nazarov PayPal account—are, on information and belief, being dissipated in the post-filing window. Once dissipated, those proceeds will be permanently unrecoverable; the operator-tier Defendants reside outside the United States and have demonstrated, through the post-filing flight, a willingness to evade enforcement. The records of the operator's identity held by Cloudflare and Tucows are subject to deletion in the ordinary course; the post-filing shutdown materially increases the risk of deliberate destruction of those records by the customer of record. The gay-torrents.org domain, if not locked, can be transferred to a third party at the operator's discretion, defeating the eventual domain-transfer remedy Plaintiff seeks at final judgment. No retrospective damages award can restore

these losses if they occur. *Cf. Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (inadequacy of legal remedy established where damages would be difficult to calculate or where defendant lacks ability to satisfy a judgment).

### C. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief.

The same considerations establish irreparable harm. The dissipation of recoverable assets is the paradigm example of irreparable injury where the defendant is foreign, judgment-collectability is uncertain, and active dissipation is evidenced. The destruction of identification records held by third parties is irreparable because those records cannot be reconstructed. The transfer of the gay-torrents.org domain to a third party would frustrate the equitable transfer remedy Plaintiff has pleaded and would, on information and belief, perpetuate the infringement of Plaintiff's copyrights through a successor operator.

The post-filing operator flight described in Section J of the First Amended Complaint, and incorporated here by reference, is not speculation. It is documented—in third-party news reporting (TorrentFreak) and in contemporaneous Reddit discussion incorporating direct admin-side testimony—and it has occurred while this very Motion was being prepared. Compl. ¶¶ 85-96; Bleicher Decl. ¶¶ 25-30. Each day without an asset freeze is a day in which the proceeds of infringement may be moved beyond the reach of this Court.

### D. The Balance of Equities and the Public Interest Favor an Injunction.

The narrowed relief sought imposes minimal burden on the Enjoined Defendants beyond preventing the dissipation of proceeds that, on the merits, do not lawfully belong to them. The asset freeze does not transfer any property; it preserves the status quo pending judgment. The records preservation directed to Cloudflare and Tucows imposes a routine, ministerial duty already familiar to those entities. The Tucows registrar lock is similarly routine. The defendant-directed preservation duty merely codifies an obligation that already exists under common law spoliation principles. The defendant-directed disclosure requirement is the necessary corollary of the operator-tier Defendants' deliberate concealment.

The public interest weighs heavily in favor of injunction. The public interest favors the protection of copyrights, the orderly functioning of regulated payment systems, and the deterrence of mass commercial piracy. *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (public has

compelling interest in protecting copyrights). The narrowly tailored relief sought here serves each of those interests without infringing on any legitimate countervailing public interest.

### E. Ex Parte Relief Is Warranted Under Rule 65(b).

Plaintiff seeks the asset-freeze and registrar-lock components of the requested relief on an ex parte basis under Federal Rule of Civil Procedure 65(b)(1) because notice to the Enjoined Defendants would defeat the very purpose of the relief: a defendant with prior notice of an impending asset freeze can transfer or withdraw the assets before the freeze takes effect, and a defendant with prior notice of a registrar lock can transfer the domain to a third party before the lock is applied. The post-filing flight already evidenced by the operator-tier Defendants confirms that they have the means, the motive, and the demonstrated willingness to take such defeating action. The records-preservation components of the relief, by contrast, may proceed with notice to the Enjoined Defendants because preservation duties cannot be defeated by advance notice; preservation merely instructs the third-party custodian to refrain from deletion, regardless of any subsequent direction by the Enjoined Defendants. The accompanying Rule 65(b)(1)(B) Certification of Counsel sets forth the reasons why notice should not be required as to the ex parte components.

### F. Bond.

Federal Rule of Civil Procedure 65(c) provides that an injunction may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of bond is committed to the Court's discretion. *Habitat Educ. Ctr. v. United States Forest Serv*., 607 F.3d 453, 458 (7th Cir. 2010). The narrowed relief Plaintiff seeks imposes no material cost on the Enjoined Defendants beyond preventing dissipation of proceeds that, on the merits, do not lawfully belong to them. Plaintiff respectfully suggests that bond in an amount not exceeding $5,000.00 is appropriate.

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Renewed Motion for Temporary Restraining Order and Preliminary Injunction, in the form set forth in the accompanying Proposed Order and grant such other and further relief as the Court deems just and proper.

DATED: May 27, 2026

Respectfully submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
Counsel for Plaintiff